**FRILLZ, INC., Plaintiff,**

**v.**

**Philip LADER, in his capacity as Administrator of the United States Small Business Administration, Defendant.**

**Civil Action No. 94–12409–RCL.**

United States District Court,
D. Massachusetts.

May 15, 1996.

Evans J. Carter, Hargraves, Karb, Wilcox & Galvani, Framingham, MA, for Plaintiff.

Glenn P. Harris, Office of General Counsel, U.S. Small Business Administration, Washington, DC, for Defendant.

## MEMORANDUM AND ORDER

LINDSAY, District Judge.

This case is before the court on the defendant's motion to dismiss, or, in the alternative, for summary judgment, and on the plaintiff's motion for summary judgment. Because the court considered affidavits and other materials outside the pleadings, this motion will be treated as a motion for summary judgment under Fed.R.Civ.P. 56(c). At oral argument, the court denied both parties' motions for summary judgment, except that it reserved judgment on the matter (raised by the defendant) that is the subject of this order: the effect of 15 U.S.C. § 636(a)(6) on the contract at issue in this case. After consideration of the arguments of the parties, the statute, and the legislative history, the court concludes that the defendant's motion must be GRANTED.

### I. Standard for Summary Judgment

Under Fed.R.Civ.P. 56(c), a court "may grant summary judgment 'if all the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *McCarthy v. Northwest Airlines,* 56 F.3d 313, 314 (1st Cir.1995),

*quoting* Fed.R.Civ.P. 56(c). In this case, there is no material, disputed fact. The appropriateness of summary judgment depends solely on the application of the pertinent statute to the transaction at issue.

## II. Facts

This case involves the Small Business Administration's ("SBA") guaranty of a loan by the Eastern Bank ("Bank") to Frillz, Inc. ("Frillz"), a small retailer. The SBA agreed to guarantee a loan and then, Frillz claims, breached its agreement by withdrawing its guaranty. Frillz claims losses from the withdrawal of the guaranty which, in turn, foreclosed Frillz' access to the underlying bank loan.

The SBA signed the disputed "Authorization and Loan Agreement" ("Agreement") on February 26, 1993, approving the Bank's request for the SBA to guaranty 80% of a $612,000 loan from the Bank to Frillz. The SBA extended the time for the first disbursement of the loan (initially set at "no more than four months" from the date of the Agreement, Agreement at 2 ¶ 2(b)) a number of times, as evidenced by a series of letters between the SBA and the Bank. During the extended period preceding the disbursement of the loan, Frillz' business suffered. The SBA then refused to authorize disbursement of the funds, allegedly causing damage to Frillz.

The Agreement conditions the loan on "[r]eceipt by lender of evidence satisfactory to it in its sole discretion, that there has been no unremedied adverse change since the date of the Application ..." Agreement at 2 ¶ 2(c). The court concluded at oral argument that this provision unambiguously vests the power to determine whether a change is indeed "unremedied" and "adverse" in the lender—here, the Bank. The Bank decided there had not been any such change. See Letter of Carol E. Fleit to Anne M. Rice dated September 15, 1993 at 4 ¶ 2 ("... I do not believe that it is an *unremedied* adverse change") (emphasis in original); Letter of Carol E. Fleit to Gordon J. Ryan dated October 19, 1993 at 1 ¶ 1 ("It is Eastern Bank's position that Frillz, Inc. has taken sufficient steps to remedy the adverse change in its financial position ..."). The SBA disagreed, maintaining that determination of whether there had been an "unremedied adverse change" was within its discretion, and refused to authorize disbursement of the loan. See Letter of Gordon J. Ryan to Carol E. Fleit dated October 25, 1993 at ¶ 1 ("The SBA agrees with your determination that an adverse change has occurred with regard to this loan.... SBA does not agree with your determination that the adverse change has been remedied.")

The SBA now argues further that the terms of the Small Business Act, specifically 15 U.S.C. § 636(a)(6), do not allow it to delegate the authority to determine the financial security of a loan it proposes to guarantee.[1]

## III. Applicable Statute

15 U.S.C. § 636(a)(6):

All loans made under this subsection shall be of such sound value or so secured as reasonably to assure repayment: *Provided, however,* That—

  (A) ...

  (B) ...

  (C) [Repealed]

On that portion of the loan used to refinance existing indebtedness held by a bank or other lending institution, the Administration shall limit the amount of deferred participation to 80 per centum of the amount of the loan at the time of disbursement: *Provided further,* That any authority conferred by this subparagraph on the Administration shall be exercised solely by the Administration and shall not be delegated to other than Administration personnel.

## IV. Procedural Posture; Analysis

The sole remaining issue on the SBA's motion for summary judgment is the effect of 15 U.S.C. § 636(a)(6) on the contract in light of the term allowing the Bank to determine

---

1. The court ultimately agrees with the SBA's argument, although it notes that the argument is curious, given that the document in question was drafted by the SBA and from all appearances is a standard form agreement.

the existence of an "unremedied adverse change."

Following oral argument, the court ordered further briefing on this subject. The parties responded by arguing that the language in the statute supported their respective contentions, with no further citations to cases, legislative history, or other interpretive devices. Faced with conflicting views of the meaning of the statute, and in the absence of any pertinent agency interpretation, *cf. Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the court turns to the statute itself and to the canons of statutory interpretation.

■ First, it is necessary to engage in a somewhat pedantic and unavoidably ponderous definition of terms used in the statute. Unfortunately, Congress was less than precise in denominating various categories and sub-categories of the statute. Specifically, in the language in question, Congress refers to "this subsection" and "this subparagraph," without designating the meaning of either term. A reading of other portions of the statute provides little guidance, as Congress refers to various divisions and their subdivisions by the term "subsection" (for example, 15 U.S.C. § 636(a) might be called a "subsection;" 15 U.S.C. § 636(a)(6) might also be called a "subsection"). For the purposes of construing this statute, the court concludes that, by "subsection," Congress intended to refer to § 636(a) and all provisions thereunder.

■ The term "subparagraph" presents a more difficult question, but one that is nonetheless susceptible of resolution. Reading the statute, the court concludes that Congress uses "paragraph" to refer to the numbered portions of the statute which fall under the subsections. To illustrate by diagram:

§ 636(*a*) is a subsection of the statute;

§ 636(a)(*6*) is a paragraph (*see, e.g.,* 15 U.S.C. § 636(a)(4), referring to "paragraph (10) of this subsection");

§ 636(a)(6)(*A*) is a subparagraph. (boldface and italics added)

■ Applying this definition to the paragraph at issue here (15 U.S.C. § 636(a)(6)), the court is brought up short by a stylistic irregularity in the United States Code. The block of language at the end of § 636(a)(6) which declares nondelegable the exercise of "any authority conferred by this subparagraph on the Administration" does not appear to be a part of any subparagraph, as the court understands that term. Instead of being confined under (A), (B), or (C), this block of language follows (C)[2] and is flush to the left margin, stylistically in line with the language of paragraph (6). This interpretation would lead to the anomalous conclusion that, in limiting the delegation of powers conferred by "this subparagraph," Congress actually limited nothing, as "this subparagraph" does not exist.

The plaintiff makes a similar argument, based on the repeal of former subparagraph (C). The plaintiff argues that the limitation on delegation applied to subparagraph (C) and that following the repeal of that provision, the language which is the subject of this dispute was rendered meaningless. In essence, Frillz' argument can be construed as one that Congress intended this provision to expire with the body of subparagraph (C).

As initially enacted by the 97th Congress, the provision in question appeared in the same format as it currently does. That is, the language containing the limitation on the Administration's ability to delegate authority "conferred by this subparagraph" began, without indent, flush to the left margin. Act of August 13, 1981, Pub.L. No. 97–35, § 1902, 1981 U.S.C.C.A.N. (95 Stat.) 357, 769. The court can only conclude that this stylistic treatment was intentional and removed the debated language from the ambit of subparagraph (C), which was repealed.

The Supreme Court has declared, "[t]he cardinal principle of statutory construction is to save and not to destroy." *National Labor Relations Board v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 30 [57 S.Ct. 615, 620, 81 L.Ed. 893] [ (1937) ]. It is [a court's] duty 'to give effect, if possible, to every clause and word of a statute,' *Inhabitants of Montclair*

2. In fact, subparagraph (C) is no longer con-    tained in the statute, except to note its repeal.

*Tp. v. Ramsdell,* 107 U.S. 147, 152 [2 S.Ct. 391, 394, 27 L.Ed. 431] [ (1883) ], rather than to emasculate an entire section...." *United States v. Menasche,* 348 U.S. 528, 538–39, 75 S.Ct. 513, 519–20, 99 L.Ed. 615 (1955). Following this directive, and presuming that Congress does not enact language which is without meaning, the court rejects the plaintiff's argument.

The next question is what the meaning of this language is. The debated sentence declares nondelegable the exercise of "any authority conferred by this subparagraph on the Administration." 15 U.S.C. § 636(a)(6). The question before the court, then, is what authority is conferred by the subparagraph.

Two ambiguities cloud the resolution of this question. The first, discussed above, is what "subparagraph" means in this context. The second is what authority is "conferred" in a block of language (the court now refers to all of § 636(a)(6) which contains no active grants of authority. The court will address these issues in order.

■ First, the question of "subparagraph": as tediously described above, this court has concluded that "subparagraph" refers to the capital-lettered blocks of text that fall under the numbered paragraphs. In this case, however, this interpretation is of little use; the subject language is contained in no "subparagraph" as so defined. Furthermore, the block of language in which it appears (that is, the phrases beginning with "On that portion of the loan ..." and ending with the end of paragraph (6)) confers no authority on the Administration. Instead, that block of language contains only a limitation on the Administration's authority; namely, that any portion of a loan which is used to refinance existing indebtedness must be limited. 15 U.S.C. § 636(a)(6).

To give meaning to this limitation, it is necessary to construe it as applying to all of the paragraph in which it appears—that is, § 636(a)(6). It is only in this context that a limitation on "any authority conferred on the Administration" makes any sense. Ever mindful of the Supreme Court's mandate to give effect to statutory language, *Menasche,* 348 U.S. at 538, 75 S.Ct. at 519, this court concludes that this limiting language must be read in context with the full paragraph (6).

■ This determination leads to the second ambiguity, which results from the phrasing of paragraph (6). The root of this difficulty is that the language Congress chose for this paragraph mandates certain criteria for SBA loans, but does not specify who should make the determination of whether a loan meets those criteria. Specifically, the statute dictates, "All loans made under this subsection shall be of such sound value or so secured as reasonably to assure repayment ..." without delegating authority to make this determination. To belabor the point, if Congress had instead enacted a statute reading "the Administration shall ensure that all loans made under this subsection ..." etc., it would not be necessary for the court to conduct this tortuous linguistic and stylistic analysis. In that case, the "authority conferred" by the (sub)paragraph would clearly be the authority to determine the financial soundness of loans.

The language used by Congress, however, cannot be said unambiguously to confer any authority. Therefore, it is necessary for the court to interpret the statute. In doing so, the court is mindful of legislative intent, both as embodied in the statute and as expressed in any applicable legislative history. Norman J. Singer, 2A *Sutherland on Statutes and Statutory Construction* § 45.05 (Sands 4th ed. 1984).

If the limiting language regarding delegation of authority is to have any meaning at all, it must apply to the Administration's decisions regarding the soundness of loans. The court can discern no other "authority" delegated to the SBA in paragraph (6); the other provisions of that paragraph concern how to determine the soundness of such loans and a limitation on the SBA's deferred participation in loans used to refinance existing debt. Congress must have intended this result. It is the only interpretation of the limiting provision that gives it any meaning. If this were not the meaning of the limiting provision, that provision would be a superfluity.

The legislative history of paragraph (6) is sparse indeed. This paragraph was introduced to the statute during piecemeal revision of the Small Business Act in 1981. Lit-

tle legislative ink was devoted to the intent or meaning of this provision, at least at it applies to the situation at hand. These revisions were a small part of the sprawling Omnibus Budget Reconciliation Act of 1981 ("OBRA"), (Act of August 13, 1981, Pub.L. No. 97–35, 1981 U.S.C.C.A.N. (95 Stat.) 357) an act which, as its name implies, was guided by the need to reduce the cost of various federal programs. *See, e.g.,* S.Rep. No. 97–139, 97th Cong., 1st Sess. 1 (1981), *reprinted in* 1981 U.S.C.C.A.N. 396, 956 (report of the Senate Committee on Small Business). Little more information is available regarding the intent behind these revisions to the Small Business Act. Congress, in keeping with its mandate to cut federal costs, enacted new provisions which scaled back the Small Business Administration, limited the financial exposure of the SBA, and generally restricted the SBA's financial outlay. The parties have not cited to, and the court cannot find, anything in the legislative history that explains or discusses the intended meaning of the paragraph here at issue. In keeping with its understanding that Congress' overall goal was cost containment, the court concludes that the legislative intent which motivated the debated limitation clause must have been, as the SBA now argues, to forbid SBA delegation of the decision regarding a potential loan's financial soundness. If, as happened in the present case, the SBA could delegate the ability to decide whether a loan met the financial soundness requirements of § 636(a), the SBA could, in essence, delegate the right to bind the government to a losing proposition. This could hardly have been the intent of a Congress so preoccupied with effecting broad federal cost-savings that it scaled back funding for, inter alia, school lunches. (Act of August 13, 1981, Pub.L. No. 97–35, 1981 U.S.C.C.A.N. (95 Stat.) 357, 521–35).

A public policy analysis of the Small Business Act, particularly as revised in OBRA, also compels the conclusion that this clause was intended to be read as a limitation on the SBA's ability to delegate determinations such as the one in the Agreement. It seems unlikely, at best, that Congress would allow for delegation of such a determination to a bank whose financial interests could easily be at odds with those of the federal agency. If, as in this case, the bank could make the determination that the loan was sound enough for the SBA, the bank could thereby limit its exposure in the event of a default, since the SBA would be liable for 80% of the bad loan under its guaranty clause, while the bank would have only 20% exposure.

■ For the foregoing reasons, this court concludes that the meaning of the limitation clause in 15 U.S.C. § 636(a)(6) is that the SBA may not delegate to other than Administration personnel the authority to determine whether a proposed loan is of "such sound value or so secured as reasonably to assure repayment." Because the corollary of this conclusion is that the SBA was prohibited from delegating this authority to Eastern Bank, which the Agreement purported to do, that contract is void. *Tenaska Washington Partners II, L.P. v. United States,* 34 Fed.Cl. 434 (1995) ("It goes without question that an agency of the Federal Government is only empowered to act within the statutory guidelines establishing its power and that any action exceeding its statutory authority is void." *Id* at 440, citing *Office of Personnel Mgmt. v. Richmond,* 496 U.S. 414, 424, 110 S.Ct. 2465, 2471, 110 L.Ed.2d 387 (1990)); *see Ast/Servo Systems, Inc. v. United States,* 196 Ct.Cl. 150, 449 F.2d 789 (1971) (where sale of military goods exceeded statutory authority of Air Force to sell them, sale held invalid); *see also REW Enterprises, Inc. v. Premier Bank, N.A.,* 49 F.3d 163 (5th Cir.1995) (Federal land bank's act of honoring letter of credit for benefit of lender was ultra vires and void where statute did not authorize such act); *Hall v. United States,* 19 Cl.Ct. 558 (1990), aff'd without opinion, 918 F.2d 187 (Fed.Cir., 1990). Because, therefore, the contract between the Bank and the SBA was void, at least insofar as it purported to transfer to the Bank the authority to determine whether an "unremedied adverse change" had occurred, summary judgment is appropriate for the defendant, SBA.

The defendant's motion for summary judgment is GRANTED. Judgment shall enter for the defendant.

So ordered.