FRILLZ, INC., Plaintiff, Appellant,

v.

Philip LADER, as Administrator of the United States Small Business Administration, Defendant, Appellee.

No. 96–1785.

United States Court of Appeals, First Circuit.

Heard Dec. 3, 1996.

Decided Jan. 21, 1997.

Evans J. Carter, Framingham, MA, with whom Hargraves, Karb, Wilcox & Galvani were on brief, for plaintiff, appellant.

Susan M. Poswistilo, Assistant United States Attorney, Boston, MA, with whom Donald K. Stern, United States Attorney, and Glenn P. Harris, Office of General Coun-

sel, Small Business Administration, were on brief, for defendant, appellee.

Before SELYA and STAHL, Circuit Judges, and WOODLOCK,* District Judge.

SELYA, Circuit Judge.

Plaintiff-appellant Frillz, Inc., a Massachusetts corporation, seeks damages for breach of contract against Philip Lader, in his capacity as administrator of the federal Small Business Administration (SBA). The plaintiff bases its suit on the SBA's alleged refusal to honor a loan guaranty commitment. The district court granted summary judgment for the SBA. We affirm.

## I.

### Background

In February 1993, Frillz asked the SBA to guaranty a proposed loan. Frillz contemplated that the loan would be made by Eastern Bank (the Lender) in the principal amount of $612,000. Of this amount approximately $240,000 would be used to retire indebtedness owed to Fleet Bank, and the balance would be used to expand Frillz's retail operations from fourteen to seventeen stores.

In due course, the SBA approved Frillz's application for an 80% guaranty of the loan. The SBA's loan guaranty authorization contained a clause requiring receipt by the Lender of "evidence satisfactory to it in its sole discretion, that there has been no unremedied adverse change since the date of the Application ... in the financial or any other conditions of [Frillz], which would warrant withholding or not making any such disbursement."

Frillz struggled in the third quarter of fiscal 1993 (February through April), losing $189,000. In the next quarter, however, its operations returned to profitability. The Lender subsequently concluded that the adverse change in Frillz's financial picture had been remedied. Notwithstanding the Lender's satisfaction, the SBA balked; it informed

the Lender that it did not believe that the adverse change had been sufficiently ameliorated. And, it announced that any disbursement of the loan must have the approval of both the SBA and the Lender.

Frillz filed suit claiming that the SBA had reneged on its agreement that the Lender would have sole discretion to determine whether there had been an uncorrected adverse change in Frillz's financial condition. On cross-motions for summary judgment, the district court concluded that, under 15 U.S.C. § 636(a)(6) (1994), the SBA could not delegate the authority to determine the financial security of a loan to any outsider. See Frillz, Inc. v. Lader, 925 F.Supp. 83, 88 (D.Mass. 1996). Hence, the court entered judgment in the defendant's favor. See id. This appeal followed.

## II.

### Analysis

█ Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Our review of the district court's grant of summary judgment is plenary, and in canvassing the record we indulge all reasonable inferences in favor of the party opposing the motion. See Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir.1990). We are not bound by the rationale of the lower court but may instead affirm an entry of summary judgment on any alternative ground made manifest by the record. See Hachikian v. FDIC, 96 F.3d 502, 504 (1st Cir.1996). We follow that avenue here.

█ Frillz challenges the district court's holding that 15 U.S.C. § 636(a)(6) precludes the SBA from delegating to other than in-house personnel on several grounds. It argues that Congress in 1981 repealed the language in section 636(a)(6) that restricts the SBA's power to delegate, and thus that there is no statutory impediment to the SBA's delegation of authority to the Lender.[1]

---

* Of the District of Massachusetts, sitting by designation.

1. We set out in the Appendix the text of 15 U.S.C. § 636(a)(6) as it appeared before Congress amended it by enacting the Omnibus Budget

Alternatively, it asserts that even if Congress did not repeal the disputed portion of section 636(a)(6), that statute should not be interpreted to bar delegation of the SBA's authority. These questions are not without complication; indeed, the district court aptly described the task of answering them as "somewhat pedantic and unavoidably ponderous." *Frillz*, 925 F.Supp. at 86. We spare ourselves that difficulty, for the record allows us to reach the same destination by an easier, less labyrinthine path: the SBA official who approved Frillz's loan guaranty lacked power under existing SBA regulations to delegate his authority further.[2]

A suit against a federal official in his official capacity is in effect a suit against the government. *See American Policyholders Ins. Co. v. Nyacol Prods., Inc.*, 989 F.2d 1256, 1259 (1st Cir.1993). We recently observed that "parties seeking to recover against the United States in an action *ex contractu* have the burden of demonstrating affirmatively that the agent who purported to bind the government had actual authority to do so." *Hachikian*, 96 F.3d at 505. The

statutes governing the SBA permit the head of the agency—the Administrator—to authorize officers and employees of the SBA to exercise powers granted to the agency by Congress. *See* 15 U.S.C. § 634(a). Such delegations are made through agency regulations. *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).

The regulations in effect when the SBA signed the loan authorization agreement at issue here (February of 1993) stipulated that various individuals in the SBA's employ had power to approve or reject loans up to $750,-000. *See* 13 C.F.R. § 101.3–2, Pt. I § A(1)(b) (1993). This group included Gordon J. Ryan, as Chief of the Finance Division, who approved the loan authorization in this case. *See id.* Ryan also had the power to extend disbursement periods and to cancel, reinstate, and modify loan authorizations. *See id.* at § (B). But the regulations did not grant Ryan any power to transfer his authority: to the precise contrary, the regulations explicitly admonished that "[t]he authority

---

Reconciliation Act of 1981 (OBRA), Pub.L. 97–35, § 1910, 95 Stat. 778 (stating *inter alia* that section 636(a)(6)(C), which Congress described as "[s]ection[] 7(a)(6)(C) ... of the Small Business Act [is] repealed [as of] October 1, 1985"). Frillz claims that Congress thereby intended to repeal not only section 636(a)(6)(C) proper but also the last sentence of 15 U.S.C. § 636(a)(6) (which states in part that "any authority conferred by this subparagraph on the Administration shall be exercised solely by the Administration and shall not be delegated to other than Administration personnel"). This sentence appears below section 636(a)(6)(C) without any further letter or numerical reference, yet without indentation. The compilers of the code apparently determined that this sentence did not comprise part of section 636(a)(6)(C), but Frillz disagrees.

2. The question of whether Congress repealed the final sentence of section 636(a)(6) is freighted with uncertainty. When one examines the content of section 636(a)(6) as it appeared before Congress amended it in 1981 through the OBRA, the final sentence fits comfortably, in structural terms, with subsection (C). At that time, section 636(a)(6) began by stating that SBA loans must be "of such sound value or so secured as reasonably to assure repayment," and subsections (A), (B), and (C) each limited this requirement: subsection (A) with respect to loans to assist any handicapped individual; subsection (B) with re-

spect to loans for energy measures; and subsection (C) with respect to loans used to refinance indebtedness. The first clause of the final undesignated sentence also dealt with loans used to refinance existing indebtedness. It is thus reasonable to suggest that the final sentence of section 636(a)(6) comprises a part of subsection (C).

On the other hand, when Congress passed the OBRA, the final sentence of section 636(a)(6) appeared as it does now: below the three subsections, unindented. It did not appear from the form of the statute to have been part of subsection (C); and, since Congress specified only that subsection (C) was repealed, to hold now that the final undesignated sentence comprised part of that subsection would violate the principle that implied repeals of federal statutes are disfavored. *See Passamaquoddy Tribe v. Maine*, 75 F.3d 784, 790 (1st Cir.1996). Moreover, subsequent Congresses assumed that the final sentence survived the repeal, *see, e.g.*, H.R.Rep. No. 101–667, at 15 (1990), *reprinted in* 1990 U.S.C.C.A.N. 3990, 3992; H.R.Rep. No. 102–492, at 3 (1992), *reprinted in* 1992 U.S.C.C.A.N. 891, 892, and a court for that reason would be hard-pressed to find that the sentence had been deleted in 1981. Although we need not solve this riddle today, we hope that Congress will spare future courts and litigants from choosing between these two disagreeable interpretations of this damaged statute and clarify whether it intends that the final sentence of section 636(a)(6) be preserved.

delegated herein may not be redelegated." *Id.* at Pt. XI, § A(1).

Frillz does not dispute that any delegation of the SBA's authority must be made pursuant to agency regulations. Instead, it argues that because the Chief of the Finance Division was authorized to approve loans up to $750,000, he was also empowered to set the terms and conditions of such loans, and that a determination by the Lender of whether Frillz had suffered an unremedied adverse financial change was merely a loan term or condition to which Ryan could (and did) assent. This is no more than a play on words. Granting the Lender the right to determine the soundness of a loan guaranty constitutes a significant relinquishment of power. Frillz cannot circumvent the lack of any regulatory authority sufficient to permit this delegation simply by describing it as a term or condition of the loan.

This conclusion is bolstered by the language of 15 U.S.C. § 634(b)(7), a statute that grants the Administrator the power to "authorize participating lending institutions, in his discretion pursuant to regulations promulgated by him, to take such actions on his behalf, including, but not limited to the determination of ... creditworthiness." The Administrator exercised this authority in promulgating regulations creating the so-called Preferred Lenders Program (PLP). *See* 13 C.F.R. § 120.400 *et seq.* (1993). Although section 634(b)(7) does not apply here—Eastern Bank was not a member of the PLP—it strongly suggests that *any* delegation of the right to determine a prospective borrower's financial stability must be made pursuant to agency regulations. Otherwise, the cited portion of section 634(b)(7) would be superfluous.

We hold, then, that because the Chief of the Finance Division had no authority to delegate to the Lender the determination of whether Frillz had suffered an unremedied adverse change in its financial condition, the government cannot be bound by that stipulation in the loan guaranty authorization.

■ Frillz has a fallback position: it invites us to remand this case to the district court so that it may pursue an equitable estoppel claim against the SBA. We decline the invitation. The doctrine of equitable estoppel in its traditional incarnation does not apply against the federal government. *See, e.g., OPM v. Richmond,* 496 U.S. 414, 419, 110 S.Ct. 2465, 2468–69, 110 L.Ed.2d 387 (1990); *United States v. Ven–Fuel, Inc.,* 758 F.2d 741, 761 (1st Cir.1985); *see also Heckler v. Community Health Servs.,* 467 U.S. 51, 67, 104 S.Ct. 2218, 2227–28, 81 L.Ed.2d 42 (1984) (Rehnquist, J., concurring) (noting that the Supreme Court has never upheld an estoppel claim against the government). A party seeking to invoke equitable estoppel against the federal government at a minimum "must have reasonably relied on some 'affirmative misconduct' attributable to the sovereign." *Ven–Fuel,* 758 F.2d at 761. Passing the point that even such reliance may be insufficient, *see id.* at 761 n. 14, there is absolutely no evidence of affirmative misconduct by the SBA which might arguably be sufficient to support an estoppel claim against the government in this case. *See Hachikian,* 96 F.3d at 506 n. 3 (noting that equitable estoppel is generally inapplicable to the federal government when its employees induce reliance by their unauthorized actions).

### III.

### Conclusion

We need go no further. The Chief of the Finance Division lacked authority to delegate the determination of whether Frillz continued to suffer from the effects of an adverse financial change. Consequently, Frillz cannot rely on that portion of the loan authorization agreement as the basis for a breach of contract claim against the government. It follows inexorably, as night follows day, that the district court did not err in granting summary judgment in the defendant's favor.

*Affirmed.*

### APPENDIX

"The Administration is empowered ... to make loans for plant acquisition, construction, conversion, or expansion, including the acquisition of land, material, supplies, equipment, and working capital, and to make loans to any qualified small business concern ...

for purposes of this Act. Such financings may be made either directly or in cooperation with banks or other financial institutions through agreements to participate on an immediate or deferred (guaranteed) basis. These powers shall be subject, however, to the following restrictions, limitations, and provisions:

\* \* \* \* \* \*

(6) All loans made under this subsection shall be of such sound value or so secured as reasonably to assure repayment: *Provided, however,* That—

(A) for loans to assist any public or private organization or to assist any handicapped individual as provided in paragraph (10) of this subsection any reasonable *doubt shall* be resolved in favor of the applicant;

(B) recognizing that greater risk may be associated with loans for energy measures as provided in paragraph (12) of this subsection, factors in determining 'sound value' shall include, but not be limited to, quality of the product or service; technical qualifications of the applicant or his employees; sales projections; and the financial status of the business concern: *Provided further,* That such status need not be as sound as that required for *general loans* under this subsection; and

(C) the Administration shall not decline to participate in a loan on a deferred basis under this subsection solely because such loan will be used to refinance all or any part of the existing indebtedness of a small business concern, unless the Administration determines that—

(i) the holder of such existing indebtedness is in a position likely to sustain a loss if such refinancing is not provided, and

(ii) if the Administration provides such refinancing through an agreement to participate on a deferred basis, it will be in a position likely to sustain part or all of any loss which would have otherwise been sustained

by the holder of the original indebtedness: *Provided further,* That the Administration may decline to approve such refinancing if it determines that the loan will not benefit the small business concern.

On that portion of the loan used to refinance existing indebtedness held by a bank or other lending institution, the Administration shall limit the amount of deferred participation to 80 per centum of the amount of the loan at the time of disbursement: *Provided further,* That any authority conferred by this subparagraph on the Administration shall be exercised solely by the Administration and shall not be delegated to other than Administration personnel."

15 U.S.C.S. § 636(a)(6) (Law. Co-op. 1984).