**In re James VINCENT, Joanna Vincent, Debtors.**

No. 94–31461.

United States Bankruptcy Court, D. Connecticut.

Dec. 20, 2000.

618

Walter D. Wagoner, Jr., New Haven, CT, for Debtors.

James J. Farell, Norwalk, CT, for Dime Savings Bank of New York, FSB.

## MEMORANDUM OF DECISION ON MOTION TO AVOID JUDICIAL LIEN

ALBERT S. DABROWSKI, Bankruptcy Judge.

### I. INTRODUCTION

In the above-captioned matter the Debtors seek to avoid pursuant to 11 U.S.C. § 522(f) a judgment lien held by the Dime Savings Bank of New York, FSB (hereafter, "Dime") on real property owned by them at the commencement of their bankruptcy case, but conveyed by them to third parties prior to the institution of the present contested matter. This controversy rests on an unusual factual scenario which gives rise to two contested legal issues. For the reasons stated below, the Court determines that even though the Debtors' prior conveyance of the subject real property is not an impediment to their present ability to avoid a judicial lien on such property, Congress has determined to preclude lien avoidance of a mortgage foreclosure deficiency judgment lien such as that at issue here.

### II. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant matter by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine the matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(K), (O).

### III. FACTUAL & PROCEDURAL BACKGROUND

On or about December 4, 1992, Dime obtained a deficiency judgment against the Debtors in the amount of $100,316.81 in connection with a foreclosure of real property know as and numbered 27–29 Cottage Street, New Haven, Connecticut. On or about March 8, 1993, Dime recorded a judgment lien (hereafter, the "Dime Judgment Lien") against property of the Debtors known as and numbered 448 Thompson Avenue, East Haven, Connecticut (hereafter, the "Residence").

On December 21, 1994, the Debtors commenced the instant bankruptcy case through the filing in this Court of a joint voluntary petition pursuant to 11 U.S.C. § 302(a). Relief on said petition was simultaneously ordered by this Court. On that same day the Debtors filed Schedules

and Statements in their case.[1] Schedule A—"Real Property"—disclosed that the Debtors jointly held a fee simple interest in the Residence, which was valued by them at $140,000.00. On Schedule C—"Property Claimed as Exempt"—the Debtors elected the federal bankruptcy exemption scheme pursuant to 11 U.S.C. § 522(b)(1), and claimed exemptions in the Residence in the amount of $15,000.00 under 11 U.S.C. § 522(d)(1).[2] On Schedule D—"Creditors Holding Secured Claims"—the Debtors disclosed that the Residence was encumbered by (i) a $102,000.00 mortgage in favor of Ulster Savings, and (ii) the Dime Judgment Lien. On March 22, 1995, the Debtors received their discharge in bankruptcy, and on March 28, 1995, their bankruptcy case was closed by Final Decree.

On or about February 26, 1996, the Debtors sold the Residence to Herbert & Hana Mesirow for the sum of $134,000.00 (hereafter, the "Mesirow Sale"). From funds available at closing the Ulster Savings mortgage was paid off in the amount of $101,580.85. In addition, closing costs of approximately $8,440.00 were paid at that time. The balance of the purchase price was paid to the Debtors.

The treatment of the Dime Judgment Lien at the Mesirow Sale closing was curious. All parties to the closing were aware, at or before the closing, that the Dime Judgment Lien stood as an encumbrance of record on the Land Records of the Town of East Haven. That fact was the topic of considerable discussion at the closing, and eventually a telephone call was placed to the office of Attorney Wagoner to determine whether the claim of Dime

had been scheduled in the Debtors' bankruptcy case. The buyers' attorney spoke with a paralegal of Attorney Wagoner, who informed him that indeed Dime had been scheduled and the Debtors had received their bankruptcy discharge. This information satisfied all involved that the obtaining of a release of lien from Dime would be a mere ministerial task. As Attorney DeGennaro—the Debtors' closing attorney—testified, he and Attorney Nesi—the Mesirow's closing attorney—were both under the mistaken belief that a bankruptcy discharge of a claim underlying a judgment lien effected a *pro tanto* discharge of the lien itself. In reliance upon this erroneous view of bankruptcy law, the Debtors gave, and the Mesirows accepted, a warranty deed to convey the interest of the Debtors in the Residence. The Debtors, through counsel, also orally pledged to obtain a release of the Dime Judgment Lien.

Shortly after the closing, Attorney DeGenarro contacted Attorney Wagoner to enlist his aid in obtaining a release of the Dime Judgment Lien. At that time Attorney Wagoner was made aware that the Residence had been sold for $134,000.00.

On March 1, 1996, the Debtors filed a motion to reopen their bankruptcy case and a motion to avoid the Dime Judgment Lien (hereafter, the "First Motion"). The bankruptcy case was reopened by Order entered April 3, 1996. On May 2, 1996, the First Motion was withdrawn, and a new motion to avoid the Dime Judgment Lien (hereafter, the "Second Motion") was filed. On February 28, 1997, the Second Motion was denied by margin endorsement

---

1. On February 22, 1995, the Debtors amended their Schedules, but in no respect material to the issues at bar.

2. The Debtors included the following statement on Schedule C: "Any exemption not used is to be applied on any assets which Petitioners have forgotten or neglected to list, up to $8,300.00, under 11 U.S.C. § 522(d)(5)."

for failure to prosecute. On March 10, 1997, a third motion to avoid lien—the motion *sub judice*—was filed.

## IV. DISCUSSION

A debtor's ability to avoid the fixing of a judicial lien springs from the provisions of Section 522(f) of the Bankruptcy Code, which provides, in relevant part, that

(f) (1) Notwithstanding any waiver of exemptions, ... the debtor may avoid the *fixing* of a lien on *an interest of the debtor in property* to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(A) a judicial lien . . . .

\* \* \* \* \* \*

(2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—

(i) the lien,

(ii) all other liens on the property; and

(iii) the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

\* \* \* \* \* \*

(C) *This paragraph shall not apply with respect to a judgment arising out of a mortgage foreclosure.*

11 U.S.C. § 522(f) (1995) (emphasis supplied).

Dime does not dispute that the Dime Judgment Lien is a "judicial lien" within the meaning of Section 522(f). *See* 11 U.S.C. § 101(36). Nor does Dime dispute that the Debtors' claimed $15,000 homestead exemption is "an exemption to which

[they] would have been entitled under subsection (b)...." Nonetheless, Dime's Objection raises two distinct legal issues.

First, Dime claims that the Residence is not now owned by the Debtors, and thus is not the proper subject of a lien avoidance motion under the terms of 522(f)(1) (hereafter, the "Ownership Issue"). Second, it believes that the Dime Judgment Lien is a "judgment arising out of a mortgage foreclosure" within the meaning of Section 522(f)(2)(C), and thus excluded from the universe of voidable judicial liens (hereafter, the "Mortgage Foreclosure Issue").

### A. The Ownership Issue.

■ The Ownership Issue raises a question of temporal reference. The essential question is whether the fact that the lien-encumbered Residence is now owned by a third party should preclude the avoidance of the Dime Judgment Lien.

The Court's independent research has revealed several judicial decisions arguably on point. *See, e.g., In re Vitullo,* 60 B.R. 822 (D.N.J.1986); *In re Sizemore,* 177 B.R. 530 (Bankr.E.D.Ky.1995); *In re Kudrna,* 173 B.R. 934 (Bankr.D.Idaho 1994); *In re Montemurro,* 66 B.R. 124 (Bankr.E.D.N.Y.1984). These authorities uniformly resolve the Ownership Issue in favor of the lien creditor by concluding, in light of Section 522(f)'s use of the phrase, "an interest *of the debtor* in property" (emphasis supplied), that if debtors do not have an interest in the subject property at the time they prosecute a Section 522(f) lien avoidance motion, they have no standing to do so. Despite the surface appeal of this analysis, this Court respectfully suggests that these authorities have engaged in an incomplete analysis of the relevant statutory language.

■ The operation of Section 522(f) is not to avoid a "lien", *per se*, although that

is its practical effect in most cases. Rather, by its terms, Section 522(f) provides for the avoidance of the "fixing" of certain liens. To "fix" means to "fasten a liability upon". *Farrey v. Sanderfoot*, 500 U.S. 291, 296, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991) (citing Black's Law Dictionary). Thus, Section 522(f) operates retrospectively to annul the *event* of fastening the subject lien upon a property interest. *See id.* Accordingly, the fundamental question of ownership is whether the property encumbered by the subject lien was "property of the debtor" *at the time of the fixing* of that lien upon such property. Under the facts of the instant case the Dime Judgment Lien *fixed* as an interest upon the Residence on or about March 8, 1993—prior to the commencement date of the Debtors' bankruptcy case. At that time the Residence was "property of the debtor" within the meaning of Section 522(f). Accordingly, this Court concludes that the Debtors have standing at this time to prosecute an avoidance motion under Section 522(f).

**B. The Mortgage Foreclosure Issue.**

■ As a second line of defense, Dime seizes upon the language of Subsection 522(f)(2)(C)—"[t]his paragraph shall not apply with respect to a judgment arising out of a mortgage foreclosure" (hereafter, the "Mortgage Exclusion")—as providing an exception from lien avoidance for mortgage foreclosure deficiency judgment liens such as the Dime Judgment Lien. Certainly the language of the Mortgage Exclusion can support such an argument. Nonetheless, the Debtors read this statutory language differently; claiming that it was tailored exclusively to address a legislative concern not implicated under the facts of this case. Specifically, the Debtors argue that the Mortgage Exclusion was added to Section 522(f) at the time of the Bankruptcy Code's 1994 Amendments simply to clarify that a judgment of foreclosure does not transmute an otherwise *unavoidable mortgage* into a *judicial lien* avoidable under bankruptcy law.

This Court concludes that Subsection 522(f)(2)(C) is ambiguous, *i.e.* on its face, the paragraph is *arguably* susceptible to each of the two different interpretations suggested by the parties. In such a situation, the Court would ordinarily turn to the relevant legislative history for constructive guidance. *See, e.g., Toibb v. Radloff*, 501 U.S. 157, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991). Unfortunately, the Court is not aided by legislative history, since neither the parties' briefing and argument, nor this Court's independent research, has revealed any enlightening legislative pronouncements.

In support of their construction, the Debtors suggest that prior to the 1994 Amendments there existed a body of case law holding that a judgment of mortgage foreclosure transmuted an otherwise unavoidable mortgage into a judicial lien that was susceptible to avoidance under Section 522(f). The Debtors have not cited, nor has the Court's independent research unearthed, a single court decision establishing that putative legal principle. At least two cases exist which reference, but reject, a debtor's *argument* that a mortgage is transmuted into a judicial lien by operation of a foreclosure judgment. *In re Miller*, 8 B.R. 672 (Bankr.N.D.Iowa 1981); *Federal Land Bank of Omaha v. Blankemeyer*, 228 Neb. 249, 422 N.W.2d 81 (Neb.1988). Even if these arguments were known to Congress in 1994, this Court finds it unreasonable to believe that Congress added the Mortgage Exclusion to the Bankruptcy Code in response to such a feeble threat to the sanctity of consensual security interests in real property.

Furthermore, although they are ambiguous in the present context, the words,

"judgment *arising out of* . . . a mortgage foreclosure", more naturally suggest the mechanics of a Connecticut deficiency judgment[3] rather than that of mortgage transmutation. The Debtors' transmutation argument would be better served by a phrase such as, "this paragraph shall not apply with respect to a *judgment of foreclosure*"; in fact, the Debtors use that very terminology in their Reply Memorandum in this matter. The Mortgage Exclusion applies to the Dime Judgment Lien, and accordingly, that lien is not avoidable under Section 522(f) of the Bankruptcy Code.

## V. CONCLUSION

For the foregoing reasons, the Debtors' Motion to Avoid Lien (Doc. I.D. No. 32) shall be **DENIED** by separate order.

---

**3.** In Connecticut a deficiency judgment is part and parcel of a mortgage foreclosure action. A deficiency judgment is pursued by motion within the foreclosure action. In fact, under C.G.S. § 49–1, no instate person may be held liable on the underlying mortgage obligation *after* the foreclosure action unless she has been named as a party to the foreclosure action.