In re David J. HART and Lynn A. Hart, Debtors.

Peoples Heritage Bank, N.A., Appellant,

v.

David J. Hart and Lynn A. Hart, Appellees.

No. MB 01–067.

United States Bankruptcy Appellate Panel of the First Circuit.

Aug. 15, 2002.

Fred W. Bopp, III, Perkins, Thompson, Hinckley & Keddy, P.A., Portland, ME, on brief for the appellant.

Jeffrey M. Frankel, Curtatone, Doto & Frankel, P.A., Somerville, MA, on brief for the appellees.

Before VAUGHN, BROWN, and KORNREICH, U.S. Bankruptcy Appellate Panel Judges.

## OPINION

BROWN, Bankruptcy Judge.

The United States Bankruptcy Court for the District of Massachusetts (Hillman, C.J.) granted the Debtors' motion to avoid liens, including the deficiency judgment lien of BankNorth, N.A., f/k/a Peoples Heritage Bank, N.A. (the "Bank"), pursuant to 11 U.S.C. § 522(f).[1] The Bank's judgment was obtained in a suit brought in Massachusetts state court to domesticate a judgment previously obtained in the state court of Maine, in the context of a mortgage foreclosure action against real property located in Maine. The Bank appeals the order avoiding its lien on the grounds that (1) avoidance of its lien is prohibited under § 522(f)(2)(C) since this is a judgment arising out of a mortgage foreclosure; (2) the state law of Maine, where the foreclosure action was prosecuted and the deficiency judgment obtained, rather than the state law of Massachusetts, where the deficiency judgment was domesticated, determines whether the Bank's judgment fits within § 522(f)(2)(C); and (3) under Maine law, this judgment does arise from a mortgage foreclosure and, therefore, fits within the exclusion of § 522(f)(2)(C). The Debtors counter that § 523(f)(2)(C) does not preclude avoidance of the Bank's lien. For the reasons set forth below, we affirm the decision of the bankruptcy court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts are not in dispute. The Bank's predecessor in interest obtained a foreclosure and sale judgment against the Debtors' real property located in Bridgton, Maine ("the Maine property") on May 23, 1996. Pursuant to that judgment, the property was sold on September 23, 1996. On January 28, 1997, the mortgagee obtained a deficiency judgment in the Maine foreclosure action in the amount of $11,718.54 plus interest. A writ of execution was issued by the Maine court on February 10, 1997. On April 3, 1997, the Bank filed a motion in Massachusetts state court to domesticate its Maine judgment in Massachusetts. On July 3, 1997, upon the Debtors' default, the Massachusetts state court granted the Bank's motion and issued a judgment against the Debtors in the amount of $12,921.48 plus interest. The Bank obtained a Massachusetts writ of execution against the Debtors on July 17, 1997, and on July 29, 1997, the Bank recorded its judgment in Massachusetts, thereby creating a lien against the Debtors' real property in Woburn, Massachusetts ("the Massachusetts property").

On June 9, 1997, David Hart filed a petition for relief under Chapter 7 of the Bankruptcy Code in the United States

---

1. All references to statutory sections herein refer to the Bankruptcy Code [Title 11 of the United States Code] unless otherwise indicated.

Bankruptcy Court for the District of Massachusetts. Lynn Hart filed for Chapter 7 relief in the same court on January 5, 1998. On December 19, 2000, the bankruptcy court entered an order directing joint administration of these two related cases. The Debtors filed the subject motion to avoid liens on March 22, 2001 and the motion was granted on August 14, 2001.

## II. ISSUES ON APPEAL

There are two distinct legal issues raised by this appeal. The first is the issue identified by the parties, namely, whether, in general, mortgage deficiency judgments are excluded from avoidance under § 522(f) by virtue of § 522(f)(2)(C); and, if so, whether state foreclosure law governs whether a particular mortgage deficiency judgment fits within § 522(f)(2)(C). The second legal issue, raised *sua sponte* by this Panel, is whether the Massachusetts judgment is void *ab initio* as against David Hart, as it was obtained by the Bank after David Hart had filed bankruptcy without the Bank having first obtained relief from stay.

## III. JURISDICTION

The United States Bankruptcy Appellate Panel for the First Circuit (the "Panel") has jurisdiction over this appeal of the bankruptcy court's order granting the Debtors' motion to avoid the Bank's lien. *See* 28 U.S.C. § 158(a)(1) and (b).

## IV. STANDARD OF REVIEW

■ A bankruptcy court's findings of fact are reviewed under the clearly erroneous standard, while its conclusions of law are reviewed *de novo*. *See Brandt v. Repco Printers & Lithographics, Inc. (In re*

*Healthco Int'l. Inc.)*, 132 F.3d 104, 107 (1st Cir.1997); *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30 (1st Cir.1994); *In re SPM Mfg. Corp.*, 984 F.2d 1305, 1310–11 (1st Cir.1993); *see also* Fed.R.Bankr.P. 8013. Since only conclusions of law are at issue in this appeal, the Panel reviews the record *de novo*.

## V. DISCUSSION

The parties seek a determination of the meaning of the phrase "a judgment arising out of a mortgage foreclosure," as used in § 522(f)(2)(C). Subsection 522(f)(1) allows a debtor to avoid certain liens to the extent the liens impair an exemption to which a debtor is entitled. Of relevance here is subparagraph (A) of § 522(f)(1) which addresses judicial liens: [2]

> (f)(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
> (A) a judicial lien ...

In this case, the Debtors filed a motion to avoid several judicial liens which they alleged impaired their homestead exemption and the Bank objected to avoidance of its lien. Paragraph 522(f)(2) sets forth the formula to be utilized in determining whether a particular lien impairs an exemption. It provides:

> (f)(2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—

---

**2.** Subparagraph (B) of subsection 522(f)(1) allows the avoidance of liens which are nonpossessory, nonpurchase-money security interests in certain personal property and is not invoked by the underlying motion.

(i)the lien,

(ii) all other liens on the property; and

(iii) the amount of the exemption that the debtor could claim if there were no liens on the property; exceeds the value that the debtor's interest in the property would have in the absence of any liens.

(B) In the case of a property subject to more than 1 lien, a lien that has been avoided shall not be considered in making the calculation under subparagraph (A) with respect to other liens.

(C) This paragraph shall not apply with respect to a judgment arising out mortgage foreclosure.

## A. Whether Mortgage Deficiency Judgments Are Excluded From Avoidance Under § 522(f) by Virtue of § 522(f)(2)(C)

### 1. Framing the Analysis

The parties have framed the issue on appeal to be whether § 522(f)(2)(C) should be construed to exclude mortgage deficiency judgments from avoidance under § 522(f). Indeed, this is the way the issue has been framed in most of the cases questioning the proper construction of this provision. Since its enactment in 1994, *see* Pub.L. 103–394 (Oct. 22, 1994), several courts have considered the meaning of § 522(f)(2)(C) and their rulings have been divergent. Many courts have held that § 522(f)(2)(C) does not protect mortgage deficiency judgments from avoidance, and the Appellees argue we should follow these cases. *See In re Carson*, 274 B.R. 577 (Bankr.D.Conn.2002); *In re Pascucci*, 225 B.R. 25 (Bankr.D.Mass.1998); *In re Smith*

270 B.R. 557 (Bankr.W.D.N.Y.2001). Other courts have held, as the Appellant urges this Panel to hold, that a mortgage deficiency judgment obtained in a mortgage foreclosure action is indeed "a judgment arising out of a mortgage foreclosure" and, hence, cannot be avoided under § 522(f). *See In re Liberman*, 244 B.R. 557 (E.D.N.Y.2000); *In re Vincent*, 260 B.R. 617 (Bankr.D.Conn.2000). It is the Panel's position that in order to properly construe this provision, the analysis must be framed differently.

At the outset of our analysis, we find it is necessary "to engage in a somewhat pedantic and unavoidably ponderous definition of terms used in [§ 522]." *Frillz, Inc. v. Lader*, 925 F.Supp. 83, 86 (D.Mass.1996), *aff'd*, 104 F.3d 515 (1st Cir. 1997), *cert. denied, Frillz, Inc. v. Alvarez*, 522 U.S. 813, 118 S.Ct. 59, 139 L.Ed.2d 22 (1997). As was the case in *Frillz*[3], in this instance "Congress was less than precise in denominating various categories and sub-categories of [the statute]." *Id.* Similar to the *Frillz* court, this Panel is faced with a section of the Bankruptcy Code that refers to "this paragraph" and "this subsection" without designating the meaning of either term. *Id.* The *Frillz* court did not let this lack of definition deter its analysis of the Bankruptcy Code's structure. Having found its analysis persuasive, this Panel adopts *Frillz's* analytical approach for its own analysis of § 522. Thus, the Panel concludes that in § 522, Congress uses "paragraph" to refer to the numbered portions of the statute which fall under the subsections. Specifically, the Panel holds: (1) that § 522(f) is a subsection; (2) that § 522(f)(2) is a paragraph; and (3) that § 522(f)(2)(C) is a subparagraph.

---

**3.** In *Frillz*, the court was called upon to interpret a federal statute governing Small Business Administration loan guaranties.

Moreover, to date, scrutiny of § 522(f)(2)(C) has begun with the premise that the provision is intended to create an exclusion to the avoiding powers created by § 522(f). Courts have then focused on the scope of that exclusion. We disagree with this premise and for the reasons articulated below we hold that subparagraph (f)(2)(C) is not an exclusion at all.

## 2. Lack of Ambiguity—Plain Meaning

Most courts that have analyzed § 522(f)(2)(C) have based their analysis upon a finding that the subparagraph is ambiguous, *i.e.*, on its face it appears to be susceptible to each of the two different interpretations suggested by the parties. *See In re Vincent,* 260 B.R. at 621.[4] We opine that the ambiguity found by other courts may be due more to the way the issue was framed rather than to the actual language of the provision. We find that if this provision is analyzed by reference to its placement in § 522(f) and in conjunction with the definitions set forth in § 101, it is not ambiguous.

■ Given this framework, the Panel determines that the phrase "this paragraph" in subparagraph § 522(f)(2)(C) is a reference to paragraph § 522(f)(2). Likewise, paragraph § 522(f)(2)(A)'s reference to "this subsection" at its beginning means subsection § 522(f) *in its entirety.* Thus, the impairment formula set forth in § 522(f)(2)(A) applies to all judicial liens and nothing in § 522(f)(2)(C) requires a different formula being applied to some sorts of liens. While we recognize this position is contrary to the majority of courts which have considered this question, *see In re Liberman,* 244 B.R. 557; *In*

*re Vincent,* 260 B.R. 617, we are persuaded that to hold otherwise would ignore the plain meaning of § 522(f)(2).

If Congress had intended to exclude a judgment arising out of a mortgage foreclosure from avoidance under § 522(f), it easily could have accomplished that by putting an exclusion in § 522(f)(1), as it did for judicial liens arising out of alimony, maintenance and support, or by providing in § 522(f)(2)(C) that this subsection shall not apply with respect to a judgment arising out of a mortgage foreclosure. However, it did neither, and we must presume it acted intentionally. *See Barnhart v. Sigmon Coal Co., Inc.,* 534 U.S. 438, 122 S.Ct. 941, 151 L.Ed.2d 908 (2002); *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994); *In re 229 Main Street Ltd. P'ship,* 262 F.3d 1, 5 (1st Cir.2001).

■ Moreover, it is important to note that Congress uses the word "judgment" in subparagraph § 522(f)(2)(C), whereas it uses the word "lien" everywhere else in § 522(f). Since Congress uses the term "lien" throughout § 522, its sudden use of the term "judgment" in subparagraph § 522(f)(2)(C) is significant, and we must presume this distinction to have been deliberate. *See Barnhart,* 534 U.S. 438, 122 S.Ct. 941; *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556; *In re 229 Main Street Ltd. P'ship,* 262 F.3d 1. If Congress intended to exclude deficiency judgment liens, it would have used the word "lien" in § 522(f)(2)(C) as it does elsewhere in this provision. However, by choosing the word "judgment", we must logically interpret Congress' choice to mean it was something

---

4. This Panel does not dispute that when the plain language of a statute supports two contradictory interpretations, it is proper for a court to look to the statute's legislative history for guidance as to the intent of the provision.

*Toibb v. Radloff,* 501 U.S. 157, 111 S.Ct. 2197, 115 L.Ed.2d 145, (1991). In this instance, however, there is no legislative history.

other than a lien in subparagraph § 522(f)(2)(C).

■ Although the Bankruptcy Code does not define "judgment," in the legal realm it generally means "[a] court's final determination of the rights and obligations of the parties in a case." BLACK'S LAW DICTIONARY 846 (7th ed.1999). While judicial liens arise out of judgments, not all judgments result in judicial liens. For example, a judgment arising out of a mortgage foreclosure is essentially an order of sale, grounded on the original, consensual undertaking of the parties; it does not create any new lien. The definitions of judicial lien and lien in the Bankruptcy Code support this distinction.[5] Other than the carefully defined and limited category of security interests found in § 522(f)(1)(B), the only liens which may be avoided under § 522(f) are judicial liens. According to its plain language, subsection 522(f) does not allow for the avoidance of judgments; rather, it allows for avoidance of judicial liens which impair exemptions.

### 3. Exclusion or Clarification

There is no dispute that the subject mortgage was foreclosed in Maine, and the deficiency judgment was originally entered in Maine. That judgment was later domesticated in Massachusetts and gave rise to a judicial lien on the Debtors' Massachusetts residence. The crux of the Bank's argument is that the Massachusetts judgment arises directly out of the original deficiency judgment entered in the Maine foreclosure action. On this point we agree. The Bank then argues that since the Maine deficiency judgment is excluded from avoidance by § 522(f)(2)(C), the Massachusetts deficiency judgment is *de facto* also excluded from avoidance by operation of law under § 522(f)(2)(C). We find both this premise and this conclusion to be flawed.

■ The purpose of § 522(f)(2)(C) is to distinguish judgments that are not avoidable from judicial liens that are avoidable. While the subject judicial lien was obtained to enforce the mortgage foreclosure judgment, that does not change its essential nature as a lien, nor does it mitigate its susceptibility to avoidance under § 522(f)(2).

In applying § 522(f)(2)(A) to the Debtors' motion, the bankruptcy court would properly refer to the impairing lien as a judicial lien and would read the statute as follows:

(2)(A) For the purpose of this subsection, [the Bank's judicial] lien shall be considered to impair [the Debtors'] exemption to the extent that the sum of—

(A) [the Bank's judicial] lien,

(B) all other liens on the property; and

(C) the amount of the exemption that the Debtor could claim if there were no liens on the property;

exceeds the value that the [Debtors'] interest in the property would have in the absence of any liens.

Clearly when a debtor is seeking to avoid a judicial lien, the subject of paragraph § 522(f)(2) is that judicial lien.

Since we must assume that Congress was intentional in its placement of subpar-

---

**5.** *See* § 101. Definitions.
  In this title—
  ***
  (36) "judicial lien" means lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding;

  (37) "lien" means charge against or interest in property to secure payment of a debt or performance of an obligation;

agraph § 522(f)(2)(C) within paragraph § 522(f)(2), *see Barnhart*, 534 U.S. 438, 122 S.Ct. 941, *BFP*, 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556, (1994); *In re 229 Main Street Ltd. P'ship*, 262 F.3d at 5, we must then also assume that paragraph § 522(f)(2) shall not apply to judgments arising out of foreclosure actions, as subparagraph § 522(f)(2)(C)'s reference to "this paragraph" means paragraph § 522(f)(2).

▆▆▆ Thus, we conclude that when Congress used the specific terms it did in enacting subparagraph § 522(f)(2)(C), it was contrasting mortgage foreclosure judgments from the liens which are avoidable under § 522(f). In other words, Congress was not creating an exclusion, it was providing clarification. Congress was making clear that the entry of a foreclosure judgment, which is essentially an order of sale, does not convert the underlying consensual mortgage into a judicial lien which may be avoided. Rather, a deficiency judgment—whether it arises in a foreclosure action as in Maine or in a separate action as in Massachusetts—is a non-consensual judicial lien like any other which is subject to avoidance under § 522(f). Therefore, this Panel holds that subsection § 522(f) describes liens that are subject to avoidance and that subparagraph § 522(f)(2)(C) clarifies that judgments arising out of a mortgage foreclosure are not liens and, hence, are never avoidable under § 522(f).

▆▆▆ We believe our analysis: (1) relies upon the plain language of § 522(f)(2)(C); (2) is consistent with the Bankruptcy Code's definitions of the salient terms; (3) presumes intentional and logical placement of this subparagraph within § 522(f)(2); and (4) allows for uniform application of the subparagraph without regard to state law. Moreover, our analysis takes into account the policy basis for creating § 522(f). The subsection was enacted to enhance a debtor's "fresh start." *See Coats v. Ogg (In re Coats)*, 232 B.R. 209, 213 (10th Cir. BAP 1999). Hence, when a question arises as to the meaning of a specific phrase in § 522(f), it should be answered in the manner most consistent with the advancement of the debtor's "fresh start." *See In re Ware*, 274 B.R. 206, 209 (Bankr.D.S.C.2001); *In re Kellar*, 204 B.R. 22, 24 (Bankr.E.D.Ark. 1996); *In re Thomsen*, 181 B.R. 1013, 1015 (Bankr.M.D.Ga.1995).

**B. Whether the Massachusetts Judgment is Void Since it was Obtained after David Hart had Filed Bankruptcy**

▆▆▆ Although it was not raised below, the record makes clear that the Bank obtained the subject judicial lien by moving for a judgment against both Debtors in a Massachusetts court and entering a judgment against the Debtors' Massachusetts property after entry of an Order for Relief in David Hart's bankruptcy case, and that it did so without an order granting it stay relief. It is well settled in the First Circuit that actions taken in violation of the automatic stay are void and without legal effect.[6] *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969 (1st Cir.1997) (actions taken in violation of the automatic stay are void, unless there are equitable considerations); *Interstate Commerce Comm'n v. Holmes Transp., Inc.*, 931 F.2d 984, 987 (1st Cir.1991) ("Judicial actions and proceedings, as well as extrajudicial

6. Although the United States Court of Appeals for the First Circuit (the "First Circuit") has concluded that actions which violate the automatic stay are void, other courts have concluded that such actions are merely voidable, and capable of discretionary cure. *See, e.g., Sikes v. Global Marine, Inc.*, 881 F.2d 176, 179 (5th Cir.1989).

acts, in violation of the automatic stay, are generally void and without legal effect unless countenanced by the courts in which the [bankruptcy] petition is pending.") (citations omitted); *Kane v. Town of Harpswell (In re Kane)*, 248 B.R. 216 (1st Cir. BAP 2000) (holding that creditor's notice of foreclosure was perfection of lien in violation of automatic stay and therefore void), *aff'd*, 254 F.3d 325 (1st Cir.2001); *In re Advent Corp.*, 24 B.R. 612, 614 (1st Cir. BAP 1982) (finding that acts in violation of automatic stay are void *ab initio* regardless of lack of knowledge of the bankruptcy filing); *Schulz v. Holmes Transp., Inc.*, 149 B.R. 251 (D.Mass.1993) (finding plaintiff's complaint was void *ab initio* because it was filed in violation of automatic stay).

The First Circuit has recognized that bankruptcy courts are authorized to annul the automatic stay retroactively, in appropriately limited circumstances, when equitable considerations warrant. *See Soares*, 107 F.3d at 975. However, retroactive relief is an extraordinary measure and the circumstances that justify it are likely to be "far and few between," *id.* at 977, often involving wrongdoing on the part of the debtor, or the innocent acts of a creditor who was unaware of the bankruptcy. It is the burden of the offending creditor to demonstrate that its void actions should be given validity retroactively. *See id.* In the present case, the Bank never sought *post facto* annulment of the automatic stay; therefore, there are no equitable considerations which would warrant a different outcome here.

The judgment at issue in this case (the "Massachusetts Judgment") was entered by the Woburn District Court on July 3, 1997, almost a month after entry of an order for relief in David Hart's bankruptcy case. In light of the foregoing, it is this Panel's conclusion that the Massachusetts Judgment is void *ab initio* as an action taken in violation of the automatic stay, at least as to David Hart and his interest in the Massachusetts property.

## VI. CONCLUSION

This Panel holds that the phrase "[t]his paragraph shall not apply to judgments arising out of mortgage foreclosures" in § 522(f)(2)(C) is intended to make clear that judgments authorizing the sale of mortgaged premises are not judicial liens subject to avoidance under § 522(f)(1), and has no bearing on the avoidability of mortgage deficiency judgments. Accordingly, we need not address the questions of state law raised by the Appellant. We hold that the bankruptcy court did not err when it granted the Debtors' motion to avoid the Bank's lien. Additionally, and as an independent ground for affirming the relief granted by the bankruptcy court on procedural grounds, the Panel holds that the Bank was acting in violation of the automatic stay when it obtained and recorded the Massachusetts Judgment against David Hart and against property of his estate; thus, the Massachusetts Judgment is void as against David Hart.

The decision of the bankruptcy court is AFFIRMED.