**In re Gordon FAIRCHILD, Eleanor Fairchild, Debtors.**

No. 97–20867.

United States Bankruptcy Court, D. Connecticut.

Oct. 31, 2002.

Robert G. Wetmore, Esq., Yalesville, CT, for Debtors.

Craig S. Taschner, Esq., Polivy & Taschner, LLC, Hartford, CT, for Fleet National Bank.

*INTERLOCUTORY RULING ON MOTION TO AVOID JUDICIAL LIENS PURSUANT TO BANKRUPTCY CODE § 522(f)*

ROBERT L. KRECHEVSKY,
Bankruptcy Judge.

I.

*ISSUES*

At issue at this stage of the proceeding is whether debtors may move, under Bankruptcy Code § 522(f), to avoid judicial liens on realty (1) at a time when the debtors no longer own the realty, and (2) where a judicial lienholder asserts that the debtors are guilty of laches in bringing their motion. The following background is based upon agreed to facts set forth in the parties' memoranda and attached exhibits and the debtors' bankruptcy petition and schedules.

II.

*BACKGROUND*

Gordon Fairchild ("Gordon") and Eleanor Fairchild (together, "the debtors") filed a joint Chapter 7 petition on March 3, 1997, listing as property claimed exempt their residence known as 905 Candlewood Lake Road South, New Milford, Connecticut ("the realty"). The court granted the debtors a discharge and following the filing of the case trustee's "no distribution" report, closed the case on February 18, 1998. New Milford Bank and Trust Company ("NMBTC"), now known as Fleet National Bank ("Fleet"), held a judgment lien ("the

Fleet lien") in the face amount of $79,907.52 recorded on January 26, 1995 on Gordon's interest in the realty. The debtors' schedules listed NMBTC only as an unsecured creditor holding a $400,000 claim.

The debtors, on May 12, 2000, conveyed the realty to buyers for a purchase price of $302,500, and in connection therewith executed a "Hold Harmless and Indemnification Agreement" ("the agreement") concerning the Fleet lien. In the agreement the debtors agreed to hold the buyers harmless and indemnify them from any claim arising from the Fleet lien, represented that the Fleet lien was "discharged in bankruptcy" and stated that the debtors will "diligently pursue the lien stripping process with their bankruptcy counsel." (Fleet Ex. 4.)

The debtors, by counsel, on June 13, 2000, filed a motion in the bankruptcy court to reopen their case for the purpose of filing a lien-avoidance motion. No further action, however, was taken by that counsel, and the court closed the reopened case on June 6, 2001. The debtors, securing new bankruptcy counsel, filed another motion on April 1, 2002 to reopen their case, which the court granted. The debtors, on April 30, 2002, filed the present motion, to which Fleet has filed an objection on the grounds summarized in Section I.[1]

## III.

### DISCUSSION

#### A.

*Does the debtor need to have an interest in the property at the time the debtor moves to avoid?*

▆ Section 522(f)(1) provides that a debtor—

may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(A) a judicial lien . . . .

Although Fleet cites decisional authority to the effect that if the debtor has no interest in the property, the debtor may not maintain a motion to avoid liens, *see, e.g., In re Vitullo,* 60 B.R. 822, 824 (D.N.J. 1986), the court finds the authority to the contrary better reasoned. The Ninth Circuit Court of Appeals, in *In re Chiu* 304 F.3d 905 (9th Cir.2002), the only court of appeals to rule on this issue, has held that the debtor need not have an interest in the property at the time it moves to avoid. *See* 304 F.3d at 908. The court adopted verbatim the reasoning of Judge Dabrowski in *In re Vincent,* 260 B.R. 617 (Bankr. D.Conn.2000):

> The operation of Section 522(f) is not to avoid a "lien," *per se,* although that is its practical effect in most cases. Rather, by its terms, Section 522(f) provides for the avoidance of the "fixing" of certain liens. To "fix" means to "fasten a liability upon." Thus, Section 522(f) operates retrospectively to annul the *event* of fastening the subject lien upon a property interest. Accordingly, the fundamental question of ownership is whether the property encumbered by the subject lien was "property of the debtor" *at the time of the fixing* of that lien upon such property.

260 B.R. at 620–21 (citations omitted). Inasmuch as the realty was property of Gordon when the Fleet lien was fixed upon the realty, the court concludes that the objection of Fleet on this issue is unavailing.

---

**1.** The motion lists an additional judicial lien, but that lienor has failed to appear.

## B.

### Laches

The doctrine of laches is a defense that one party raises to prevent an opposing party from seeking the relief she requests. It is based upon the principle that the moving party is barred from seeking relief because she has unreasonably delayed in asserting her rights to the prejudice of the other party. When considering whether the laches defense should be sustained, a court should balance[ ] plaintiff's delay against the prejudice suffered by the defendants by virtue of the delay....

....

... Defendants must have suffered some amount of prejudice to successfully invoke laches, even if plaintiffs have a weak or no excuse for their delay.

*In re Caicedo,* 159 B.R. 104, 106–07 (Bankr.D.Conn.1993) (citations and quotation marks omitted).

The court has been given no reason why the debtors' original bankruptcy counsel filed the motion to reopen the debtors' case promptly after the realty closing, and then failed to pursue a lien-avoidance motion. But even assuming that such nonaction by the attorney constitutes a weak excuse for the debtors' delay in filing the instant motion, the court concludes that Fleet has not established sufficient prejudice to sustain the drastic imposition of laches. NMBTC, in June 2000, was given notice of the debtors' motion to reopen their bankruptcy case. There is nothing in the submitted record to establish that NMBTC or Fleet expended time, money or incurred legal expense in reliance on the Fleet lien. Fleet has submitted no significant argument as to prejudice it sustained by virtue of the delay. In light of the dollar amounts and the type of realty here involved, Fleet's potential prejudice in establishing the realty's value, as of March 3, 1997, is relatively minor. *Cf. Caicedo,* 159 B.R. at 107–08 (holding in a motion to avoid a judicial lien of $2,790 that an 8–year delay prejudiced the lienholder in establishing the value of the property on petition date, and therefore, constituted laches).

The court, for reasons stated, overrules Fleet's claim that laches bars the debtors from proceeding on their motion.

## IV.

### FURTHER PROCEEDINGS

Fleet, in its memorandum, requests that if its objections are overruled, the debtors' lien-avoidance motion be set down for an evidentiary hearing. The debtors claim they are entitled to judgment on their motion without the need for such hearing. The debtors are incorrect. Fleet clearly is entitled to a hearing, and the clerk's office is requested to set the debtors' motion for a contested hearing. It is

SO ORDERED.