**In re Antoinette M. CRISCUOLO, Salvatore W. Criscuolo, Debtors.**

No. 01–32139.

United States Bankruptcy Court, D. Connecticut.

April 18, 2008.

Brian E. Kaligian, Esq., Orange, CT, for Debtor–Movant.

Christopher Lagano, Esq., Bloomenthal & Trow, LLC, Stamford, CT, for Creditor–Respondent, Webster Bank.

## MEMORANDUM OF DECISION ON MOTION TO AVOID LIENS

ALBERT S. DABROWSKI, Chief Judge.

### I. INTRODUCTION

In the above-captioned matter the Debtor Antoinette M. Criscuolo (hereafter, the "Debtor") seeks to avoid, pursuant to 11 U.S.C. § 522(f), certain judgment liens held by Webster Bank (hereafter, "Webster") on real property owned by her. For the reasons stated below, the relief requested will be **DENIED** because Congress has precluded, albeit inartfully, a debtor's avoidance of mortgage foreclosure deficiency judgment liens such as those at issue here.

### II. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant matter by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine the matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(K),(O).

### III. FACTUAL & PROCEDURAL BACKGROUND

On or about November 13, 2000, Webster obtained a deficiency judgment against the Debtor and co-debtor Salvatore W. Criscuolo (hereafter, collectively, the "Debtors") in the amount of $95,926.47, in connection with a foreclosure of real property known as and numbered 491–495 Lighthouse Road, New Haven, Connecticut. On or about February 2, 2001, Webster recorded judgment liens (hereafter, the "Deficiency Liens") against property of the Debtors known as and numbered 223 Townsend Avenue, New Haven, Connecticut (hereafter, the "Townsend Property"), as well as a separately-assessed, unimproved adjoining parcel (hereafter, the "Lot"). The Townsend Property and the Lot are hereafter collectively referred to as the "Liened Property".

On April 26, 2001, the Debtors commenced the instant bankruptcy case through the filing in this Court of a joint voluntary petition pursuant to 11 U.S.C. § 302(a). Relief on said petition was simultaneously ordered by this Court. On that same day the Debtors filed Schedules and Statements in their case.[1] Schedule A—"Real Property"—as amended, disclosed that the Debtors held a joint fee simple interest in the Liened Property, which was valued by them at $200,001.00 in the aggregate.[2] On Schedule C— "Property Claimed as Exempt"—the Debtors elected the federal bankruptcy exemption scheme pursuant to 11 U.S.C. § 522(b)(1), and claimed exemptions in the Liened Property in the amount of $30,001.00 under 11 U.S.C. § 522(d)(1) and (5).[3] On Schedule D—"Creditors Holding Secured Claims"—the Debtors disclosed that the Townsend Property was encumbered by a $170,000.00 mortgage in favor of "Washington Mutual".

On August 14, 2001, the Debtors received their discharge in bankruptcy, and on August 29, 2001, their bankruptcy case was closed by Final Decree.

On April 26, 2006, this Court reopened this bankruptcy case in order that the Debtor[4] might prosecute the instant mo-

---

1. On June 15, 2001, the Debtors amended Schedules A, B & C.

2. The Townsend Property was valued by the Debtors at $200,000.00; and the "land locked" Lot was separately scheduled by them at a value of $1.00.

3. No objections were filed to the Debtors' exemption claims.

4. Given the Debtor's *individual* prosecution of the instant matter, the Court assumes, without deciding, that she is now the *sole* owner of the Liened Property.

tion to avoid the Deficiency Liens.

## IV. DISCUSSION.

■ This contested matter presents a particularly troublesome project of statutory construction. This much is clear—Congress has determined, through Bankruptcy Code Section 522(f)(2)(C), to protect some aspect of a mortgage foreclosure process from a debtor's right to avoid a judicial lien. Unfortunately, the precise nature of this intended immunity is not readily apparent from the language of the statute; nor is there any probative legislative history to assist a court in divining the intent of Congress. The absence of such traditional indicators of legislative purpose, however, does not permit a court to create a purpose from "whole cloth"; nor does it absolve a court from searching the broader fabric of bankruptcy legislation for evidence of rational Congressional purpose.

### A. The Statutory Framework.

The natural first step in the Court's discernment process is an examination of the language of the statute itself. A debtor's ability to avoid a judicial lien springs from the provisions of Code Section 522(f), which provided, in relevant part, that—

(f) (1) Notwithstanding any waiver of exemptions, ... the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is-

(A) a judicial lien. . . .

\* \* \* \*

(2) (A) For the purposes of this subsection, a lien shall be considered

to impair an exemption to the extent that the sum of-

(i) the lien;

(ii) all other liens on the property; and

(iii) the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

(B) In the case of a property subject to more than 1 lien, a lien that has been avoided shall not be considered in making the calculation under subparagraph (A) with respect to the other liens.

(C) *This paragraph shall not apply with respect to a judgment arising out of a mortgage foreclosure.*

11 U.S.C. § 522(f) (2001) (emphasis supplied).[5]

Webster does not dispute that the Deficiency Liens are "judicial liens", or that the Debtors' $30,001.00 exemption claim in the Liened Property was "an exemption to which the[y] ... would have been entitled", within the meaning of Section 522(f). Nonetheless, Webster insists that because the Deficiency Liens had their origin in a deficiency judgment arising within a mortgage foreclosure action, they are immunized from avoidance by Section 522(f)(2)(C). Accordingly, whether the Deficiency Liens are tantamount to a "judgment arising out of a mortgage foreclosure" within the meaning of Section 522(f)(2)(C), and thereby qualify for exclusion from the universe of *avoidable* judicial liens, is the dispositive issue in this contested matter (hereafter, the "Exclusion Issue").

---

**5.** The content of paragraph (f)(2) was added to Section 522 in 1994 (hereafter, the "1994 Amendments").

## B. Judicial Authority.

This Court has previously ruled on the Exclusion Issue in another case. *See In re Vincent*, 260 B.R. 617 (Bkrtcy.D.Conn. 2000). In *Vincent* this Court held that Section 522(f)(2)(C) operates to exclude from avoidance a lien securing a deficiency judgment arising from a Connecticut mortgage foreclosure. Other courts, however, have reached contrary conclusions. *E.g., In re Hart*, 328 F.3d 45 (1st Cir.2003) ("*Hart II*") *(affirming* In *re Hart*, 282 B.R. 70 (1st Cir. BAP 2002) ("*Hart I*")); *Carson v. Citimortgage, Inc.*, 274 B.R. 577 (Bkrtcy.D.Conn.2002) (Krechevsky, J.).

In the context of the present contested matter, this Court reaffirms the holdings of its opinion in *Vincent*, and the same are incorporated herein by reference. The Court also deems it appropriate at this time to provide a fuller analysis of the Exclusion Issue in light of the contrary analyses of other courts that have confronted that issue.

## C. The Ambiguity of Section 522(f)(2)(C).

■■■ As an initial matter, the *Hart* courts disagree with *Vincent's* assertion that Section 522(f)(2)(C) is ambiguous. *See* 328 F.3d at 48, 282 B.R. at 75. However, the initial inquiry in the process of statutory construction is not the largely semantic question of whether Section 522(f)(2)(C) (hereafter, the "Mortgage Exclusion") is technically "ambiguous"—*i.e.* susceptible of two or more different meanings—but rather, whether a "plain meaning" can be divined from the words of that provision. Whether the source of difficulty in interpretation is characterized as "ambiguity", "opaqueness", or "imprecision", is beside the point. The essential point is that when the purpose of a statute is not clear on its face, it is necessary and appropriate to attempt to divine Congressional intent through supplementary means.

For the reasons elaborated below, this Court firmly believes that the words of the Mortgage Exclusion—standing alone and in relation to the broader statutory structure—are impossible to interpret without recourse to extra-textual materials and considerations.

## D. The Absence of "Plain Meaning".

In contrast to this Court's reading, the Hart courts conclude that the Mortgage Exclusion has a "plain meaning". They arrive at that conclusion by, *inter alia*, performing a taxonomic dissection of the various subparts of Section 522(f). That is indeed a sound and useful analysis, and this Court agrees with Hart's taxonomy— *i.e.* that 522(f) is a "subsection"; that 522(f)(2) is a "paragraph"; and that 522(f)(2)(C)—the Mortgage Exclusion—is a "subparagraph". From this structural analysis, the Hart courts conclude that a plain meaning of the Mortgage Exclusion becomes clear—namely, that it is a "clarification" rather than an "exclusion".[6] Specifically, Hart I states that Congress plainly used subparagraph (C) to "distinguish *judgments* that are *not avoidable* from judicial *liens* that are *avoidable*", 282 B.R. at 76 (emphasis supplied), and more specifically, to make clear that "the entry of a foreclosure judgment ... does not convert the underlying consensual mortgage into a judicial lien", *id.*, at 77.

Unfortunately, despite agreeing with the structural premises of Hart I and Hart II, this Court cannot so easily concur that those premises produce a "plain meaning" for the Mortgage Exclusion. Indeed, fol-

---

**6.** Although this is largely a semantic distinction, this Court disagrees with the *Hart* courts' characterization. There are no more classic words of exclusion than "shall not apply".

lowing a close textual reading to its logical conclusion leads to an inevitable determination that Congress did not plainly state what it intended.

For example, this Court notes that *paragraph* (2) of 522(f) consists entirely of three *subparagraphs*, to wit: (i) subparagraph "(A)"—a formula for calculation of the extent of exemption impairment (hereafter, the "Formula"); (ii) subparagraph "(B)"-a multiple lien corollary to the Formula (hereafter, the "Corollary"); and (iii) subparagraph "(C)"-the Mortgage Exclusion itself. Therefore, the literal meaning of the Mortgage Exclusion—*i.e.* "[t]his *paragraph [ (2) ]* shall not apply ...." (emphasis supplied)—is that the *Formula and Corollary* do not apply with respect to judgments arising out of mortgage foreclosures. Critically though, that construction does not literally preclude *avoidance* under *subsection* (f) of Section 522. Thus, the literal meaning of the Mortgage Exclusion is that while mortgage foreclosure-related judgments *are* subject to avoidance under subsection 522(f), such avoidance is *not governed by the Formula and Corollary*. The resulting problem, however, is that such a construction produces an absurd result—it technically allows avoidance of mortgage foreclosure-related property interests, but does not supply any analytical standards for that avoidance, such as the quantitative guidelines of the Formula—which is applicable to the avoidance of *all other* property interests.[7] This inscrutable result of a literal reading of the Mortgage Exclusion renders the Hart

courts' "plain meaning" determination—or any other assertion of "plain meaning"— untenable.

## E. Evidence of Congressional Purpose.

■ The fundamental purpose of statutory construction is a determination of Congressional purpose. If a court's analysis of the "plain meaning" of a statutory provision leads to an incredible result, then that reading must yield to a construction which enables a credible legislative purpose. *See United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Therefore, given that a close textual and structural analysis of the Mortgage Exclusion fails to produce a coherent "plain meaning", this Court must look beyond the text to other evidence suggestive of a rational legislative purpose for that particularly opaque provision.

In the course of litigation two potential legislative purposes have emerged to explain Congress' 1994 addition of the Mortgage Exclusion to Section 522, to wit:

(i) that the Mortgage Exclusion was intended to clarify that a judgment of foreclosure does not transmute an otherwise unavoidable mortgage into a judicial lien which might be avoidable under bankruptcy law (the "Mortgage Transmutation Purpose"), *see e.g.*, Hart II, 328 F.3d at 49; and

(ii) that the Mortgage Exclusion was intended as a component of a Congressional scheme of favorable statutory

---

7. It has been argued that because mortgage foreclosure-related avoidance is literally not governed by the Formula, the quantitative standards for its avoidance must, by default, be supplied by pre–1994 Amendment *case law. See, e.g., In re Smith*, 270 B.R. 557, 562 (Bkrtcy.W.D.N.Y.2001). However, there is absolutely no explanation in the legislative record why Congress would choose to perpetuate, in the sole context of foreclosure-related

avoidance, the decisional chaos it sought to abolish through the 1994 Amendments. *See generally id.*, at 559. Simply put, a rational "plain meaning" cannot be created through the aid of the absurd notion that Congress intended for some lien avoidance to be governed by *statutory* standards and other avoidance to be governed by discredited *common law.*

treatment for mortgagees, so as to encourage and sustain a flow of affordable capital into the real estate lending market (the "Flow of Capital Purpose").

As between these two potential legislative purposes, the Flow of Capital Purpose is most closely tethered to substantial and identifiable Congressional sentiment. The Mortgage Transmutation Purpose must be rejected because, *inter alia*, Congress has never publicly expressed a concern about mortgage transmutation, and further, there is absolutely no indication that Congress was even aware that such a theory had ever been advanced in a court of law.[8] *See Vincent*, 260 B.R. at 621.

By contrast, the Flow of Capital Purpose is a public policy concern that Congress has articulated and honored in other Bankruptcy Code contexts. *See, e.g., Nobelman v. American Savings Bank (In re Nobelman)*, 508 U.S. 324, 332, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) (concurring opinion (Stevens, J.); citing with approval Section 1322 legislative history analysis in *Grubbs v. Houston First American Savings Association*, 730 F.2d 236, 245–6 (5th Cir.1984)).

■ This Court readily acknowledges that in multiple ways, including those discussed above, the codified language of the Mortgage Exclusion does not perfectly serve the Flow of Capital Purpose, or for that matter, any other purpose.[9] Simply put, this Court believes that this is one of those rare instances in which Congress failed to draft a statutory provision in a manner that plainly effectuated its true legislative purpose. Such drafting failure, however, does not absolve courts of the difficult task of construing statutes to effectuate the *most likely* Congressional purpose.

■ The Mortgage Exclusion, like other Bankruptcy Code provisions, was intended to encourage affordable mortgage lending. The Mortgage Exclusion serves that goal by providing mortgagees such as Webster with immunity from deficiency lien avoidance.

### F. Other Issues.

Because this Court concludes that the Debtor may not avoid the Deficiency Liens under any circumstances, it is unnecessary to consider any other issues raised by the parties in this contested matter.

### V. CONCLUSION.

For the foregoing reasons, the Debtor's motion to avoid the judgment liens of Webster Bank (Doc. I.D. No. 22) shall be **DENIED** by separate order.

### ORDER ON MOTION TO AVOID LIENS

The above-captioned motion to avoid liens having come before the Court after due notice and a hearing; and the Court,

---

8. Courts that have attributed a Mortgage Transmutation Purpose to Congress have done so without citation to any legislative materials. *E.g., Hart II*, 328 F.3d at 49; *Hart I*, 282 B.R. at 77.

9. Although this Court understands the *Hart* courts' consternation over the Mortgage Exclusion's use of the term, "judgment", rather than "lien", there may indeed be an enlightened rationale for that choice of language. Assuming that Congress wanted to promote a mortgagee protection policy by excluding from avoidance all liens traceable to mortgage foreclosure proceedings, Congress may have considered the term, "lien", to be too narrow to capture, in the case of a multi-state fact pattern, all mortgage deficiencies. Often, as a technical matter, the lien "arises" directly from a domesticated monetary judgment, as in *Hart*, rather than from an original, single-state mortgage foreclosure judgment. This view is also supported by Congress' use of the clause, "shall not apply *with respect to* a judgment ...." rather than the more direct, "shall not apply *to* a judgment...."

after consideration of the entire record, having this day issued its *Memorandum of Decision on Motion to Avoid Liens,* in accordance with which,

**IT IS HEREBY ORDERED** that the *Debtor's Motion to Void Lien Impairing Exemptions* (Doc. I.D. No. 22) is **DENIED.**