**In re Edward PASCUCCI, Debtor.**

**Bankruptcy No. 97–19782–WCH.**

United States Bankruptcy Court,
D. Massachusetts,
Eastern Division.

Sept. 24, 1998.

Leonard M. Frisoli, Jr., Frisoli & Associates, Cambridge, MA, for debtor.

Robert L. Hamer, Joseph H. Baldiga, Paul W. Carey, Mirick, O'Connell, DeMallie & Lougee, L.L.P., Worcester, MA, for US-Trust.

John H. Slingerland, Korde & Associates, Chelmsford, MA, for Stoneham Co–Operative Bank.

## DECISION REGARDING MOTION OF DEBTOR TO AVOID LIEN

WILLIAM C. HILLMAN, Bankruptcy Judge.

### I. Background

The Debtor filed for relief on October 15, 1997.  In Schedule A, he disclosed that he and his non-debtor wife owned their home

**26.** *See supra* note 2.

(the "Property") as joint tenants. The parties in interest here have stipulated that the value of the Property is $392,000, and the value of Debtor's interest 50% of that amount. The Property is subject to the following liens and encumbrances:

1. Wakefield Trust Mortgage of $30,000;

2. USTrust Mortgage of $70,000;

3. Taxes of $5,500;

4. Execution of Brown et al. of $2,563.59;

5. Attachment of USTrust of $350,000;

6. Attachment of Stoneham Co–Operative Bank of $35,766.22;

7. Attachment of Brown et al. of $18,389.19;

8. A declaration of homestead pursuant to Mass. Gen. Laws ch. 188, § 1.[1]

The Debtor filed "Debtor's Motion to Avoid the Fixing of Liens on Debtor's Interest in Property" (the "Motion") pursuant to 11 U.S.C. § 522(f),[2] asserting that there is no equity remaining to satisfy any portion of the judicial liens.[3] As a result, the Debtor contends, he is entitled to have the judicial liens avoided. USTrust (the "Bank") and Stoneham Co-operative Bank ("Stoneham") filed objections to the Motion. For the reasons given below, the Motion is granted.

## II. Arguments

The statutory formula in § 522(f)(2)(A) appears to be straightforward. One adds up all of the liens *on the property* and the debtor's exemption. This total is contrasted with the value of *the debtor's interest in the property* in the absence of any liens. To the extent that the former exceeds the latter, the lien is avoidable.

### A. *The Bank*

The Bank argues that, rather than a adopting a strict application of the statute, the Court should first deduct the joint encumbrances and the claimed homestead from the fair market value of the Property. The resulting sum should then be divided in half to determine the Debtor's interest in the

---

1. The statute provides:

An estate of homestead to the extent of one hundred thousand dollars in the land and buildings may be acquired pursuant to this chapter by an owner or owners of a home or one or all who rightfully possesses the premise by lease or otherwise and who occupy or intend to occupy said home as a principal residence. Said estate shall be exempt from all laws of conveyance, descent, devise, attachment, levy on execution and sale for payment of debts of legacies except in the following cases:

(1) sale for taxes;

(2) for a debt contracted prior to the acquisition of said estate homestead;

(3) for a debt contracted for the purchase of said home;

(4) upon an execution issued from the probate court to enforce its judgment that a spouse pay a certain amount weekly or otherwise for the support of a spouse or minor children;

(5) where buildings on land are not owned by the owner of a homestead estate are attached, levied upon or sold for the ground rent of the lot whereon they stand.

For the purpose of this chapter, an owner of a home shall include a sole owner, joint tenant, tenant by the entirety or tenant in common; provided that only one owner may acquire an estate of homestead in any such home for the benefit of his family; and provided further, that an estate of homestead may be acquired on only one principal residence for the benefit of a family. For the purposes of this chapter, the word "family" shall include either a parent and child or children, a husband and wife and their children, if any, or a sole owner.

2. (f)(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(A) a judicial lien, other than a judicial lien that secures a debt—

. . .

(2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—

(i) the lien,

(ii) all other liens on the property; and

(iii) the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

(B) In the case of a property subject to more than 1 lien, a lien that has been avoided shall not be considered in making the calculation under subparagraph (A) with respect to other liens.

(C) This paragraph shall not apply with respect to a judgment arising out of a mortgage foreclosure.

11 U.S.C. § 522(f).

3. The two mortgages and the taxes are the only joint obligations.

Property. From that sum the judicial liens would be deducted.

The Bank argues that existing case law supports its position, citing *Wiget v. Nielsen (In re Nielsen)*, 197 B.R. 665 (9th Cir. BAP 1996); *In re Donahue*, 205 B.R. 661 (Bankr. D.Mass.1997); and *In re Witkowski*, 176 B.R. 114 (Bankr.D.Mass.1994). It contends that the case upon which the Debtor relies, *Zeigler Engineering Sales, Inc. v. Cozad (In re Cozad)*, 208 B.R. 495 (10th Cir. BAP 1997) contravenes the existing case law and is unfair.

The Bank further asserts that because the literal application of § 522(f) would produce results contrary to the intent of the statute, the literal reading cannot be sustained, citing *Summit Inv. and Dev. Corp. v. Leroux (In re Leroux)*, 69 F.3d 608 (1st Cir.1995). That is, explains the Bank, allowing the Debtor to subtract one hundred percent of the joint obligations and homestead from one-half of the Property's value is unfair and gives the Debtor a head start instead of a fresh start.[4]

The Bank furthermore argues that because the local practice has been to calculate § 522(f) as it has suggested, as demonstrated by the decisions in *Donahue* and *Witkowski*, the 1994 amendment to § 522(f), which added the formula to the statute, should not be construed to overrule that practice unless Congress so specified, citing *Midlantic Nat'l Bank v. New Jersey Dep't. of Envtl. Protection*, 474 U.S. 494, 501, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986).

Under the Bank's analysis, the application of § 522(f) would result in only partial avoidance of the Bank's lien as follows:

| | |
|---|---|
| Value of Property: | $392,000 |
| Less: mortgages and taxes: | <105,550> |
| Less: homestead: | <100,000> |
| Equity available: | $186,450 |
| Debtor's share (50%): | $ 93,225 |
| Less Brown Execution [5] | <2,563.59> |
| Amount available to satisfy Bank's attachment: | $90,661.41 |

**B. *The Debtor***

The Debtor counters that the statute is clear and the calculation set forth therein should be applied, citing *Cozad*. The Debtor asserts that the cases upon which the Bank relies are inapplicable. He further argues that deducting the value of the homestead from the value of all interests in the Property contravenes the holdings in *Nielsen, Donahue*, and *In re Finn*, 211 B.R. 780, 783 (1st Cir. BAP 1997), and unfairly favors the Bank.

The Debtor contends that there is no need to avoid a literal application of the statute because the language is unambiguous and the results are not absurd. Lastly, the Debtor argues that his interpretation should be adopted because exemptions should be liberally construed in favor of a debtor, citing *Caron v. Farmington Nat'l Bank (In re Caron)* 82 F.3d 7, 10 (1st Cir.1996).

Under the Debtor's analysis, the application of § 522(f) would result in total avoidance of all the judicial liens as follows:

| | |
|---|---|
| The judicial liens: | $406,719 [6] |
| The other liens: | 105,500 |
| The exemption: | 100,000 |
| Total: | $612,219 |
| Debtor's Interest (50%) | $196,000 |
| Amount by which liens exceed Debtor's interest in the Property: | $416,219 |

**C. *Stoneham (and Debtor's response)***

Stoneham argues that, under § 522(f)(2)(C), its lien cannot be avoided. That provision states: "This paragraph shall not apply with respect to a judgment arising out of a mortgage foreclosure." Since Stoneham's judgment arises out of a mortgage foreclosure (albeit a deficiency on the foreclosure of a different property), it argues that the Debtor cannot avoid its lien. The Debtor counters the argument of Stoneham by questioning the application of § 522(f)(2)(C) to the set of facts in this case, arguing that the subsection should apply only when a creditor is pursuing a foreclosure by action under Mass. Gen. Laws c. 244.

---

**4.** Head starts have been frowned upon in over one hundred cases since the phrase appeared in *Lines v. Frederick*, 400 U.S. 18, 21, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970).

**5.** Senior to the Bank.

**6.** The Debtor would have me lump together all of the judicial liens. Although under § 522(b)(2)(B) each lien should be analyzed separately, in this case the result is the same.

## III. Analysis

### A. *The Debtor and the Bank*

■ As between the Debtor and the Bank, the issue before me is the proper formula to be employed under § 522(f) to determine whether the Debtor has any equity in the Property to satisfy the Bank's lien.[7] *Cozad* adopted the often-cited rule of statutory construction that unambiguous words of a statute should be given their ordinary meaning absent an outcome at odds with the intent of its drafters.

■ I agree with and adopt the holding of *Cozad*. The formula set forth in the statute is clear and unambiguous. "Language is given its common meaning if the unambiguous statutory language is not defined and the result is not absurd or contrary to the legislative purpose." *Id.* at 498.

I cannot conclude that the literal interpretation would be contrary to the legislative purpose or lead to absurd results for two reasons. First, the First Circuit has demonstrated that the legislative history of the amendments to § 522(f) is unreliable and therefore the exact purpose cannot be deciphered. *East Cambridge Savings Bank v. Silveira (In re Silveira)*, 141 F.3d 34, 38–39 (1st Cir.1998). Second, I do not believe that the Debtor's retention of some equity is manifestly absurd. Exemptions have been recognized since the earliest bankruptcy statutes. The fact that the Debtor's exemption and hence the equity retained by him and the co-owner is enhanced thereby does not authorize me to ignore the plain meaning of the statute.[8]

The cases cited from this district by both sides are not helpful. *Witkowski* was decided before the statutory amendment.[9] In *Donahue*, "value, equity, and the extent of impairment" were not disputed. 205 B.R. at 662 n. 2.

I also disagree with the Bank's argument that Congress has failed to specify clearly its intent to overrule the prior practice of deducting the joint obligation and the exemption from the fair market value when deciding whether to avoid a lien. Although the practice may have been prevalent in Massachusetts, as the Bank contends, Congress, by opting for a specific formula, has spoken clearly, even if its reasons for so acting are obscure. The amendment has overridden any contrary prior practice.

The Bank lastly argues for the deduction of the homestead from the fair market value because the homestead protects a residence for the family. While Massachusetts has articulated protection of the family as the goal of its homestead statute,[10] that statement does not override the plain provisions of § 522(f). "[F]ederal law determines whether property is exempted and immunized against seizure and sale for prebankruptcy debts." *Bruin Portfolio, LLC v. Leicht (In re Leicht)*, 222 B.R. 670, 678 n. 9 (1st Cir. BAP 1998), *quoting Davis v. Davis (In re Davis)*, 105 F.3d 1017, 1022 (5th Cir. 1997).

For the forgoing reasons, I will enter an order granting the Motion as to the Bank.

### B. *The Debtor and Stoneham*

■ Section 522(f)(2)(C) provides that "This paragraph shall not apply to 'a judgment arising out of a mortgage foreclosure.'" It appears that Stoneham foreclosed upon other real estate owned by the Debtor and that the sale resulted in a deficiency. As a result, Stoneham brought suit against the Debtor and obtained an attachment on the Property.

The initial inquiry must be to determine whether the Stoneham attachment is such a judgment. I hold that it is not. In the first place, Stoneham's judgment is for a deficiency on a promissory note; it did not arise out

---

7. If there is any equity, the lien could be partially avoided. *East Cambridge Savings Bank v. Silveira (In re Silveira)*, 141 F.3d 34 (1st Cir.1998).

8. I respectfully disagree with the contrary recent decision in *Lehman v. Visionspan, Inc. (In re Lehman)*, 223 B.R. 32, 34 (Bankr.N.D.Ga.1998).

9. As was *Nielsen*.

10. *See* Mass. Gen. Laws c. 188 § 1.

of an action to foreclose.[11]  If § 522(f)(2)(C) has any application to Massachusetts jurisprudence, it may be, as suggested by the Debtor, to a "conditional judgment" in a judicial foreclosure action under Mass. Gen. Laws c. 244:

> [T]he court shall determine the amount due to the plaintiff on the mortgage, and shall enter judgment that if the defendant within two months after the judgment pays to the plaintiff such amount with interest and the costs, the mortgage shall be void, and the defendant shall hold the land discharged thereof; otherwise, that the plaintiff shall have execution for possession and for costs.

Mass. Gen. Laws c. 244, § 5.

I hold that § 522(f)(2)(C) is inapplicable to Stoneham's attachment and will grant Debtor's motion as to Stoneham.[12]

### IV.  Conclusion.

Debtor's " Motion to Avoid the Fixing of Liens on Debtor's Interest in Property" is granted, subject to 11 U.S.C. § 349.  An appropriate order will enter.

---

**11.**  Paragraph 1 of Stoneham's complaint in the Superior Court alleges "This is a Complaint brought by the Plaintiff, Stoneham Co-Operative Bank (hereinafter 'SCB'), seeking to collect a deficiency *on a Note* after foreclosure of SCB's mortgage." *Objection of Stoneham Cooperative Bank to Debtor's Motion*, Exhibit C (emphasis added).

**12.**  Even if we were dealing with a "judgment arising", Stoneham errs in thinking that the quoted provision makes § 522(f) inapplicable in its entirety.  The statute includes references both to "this subsection" and to "this paragraph".  In § 522(f)(1) we find its provisions "subject to paragraph (3)."  I conclude that § 522(f) is a subsection and that §§ 522(f)(1), (2), and (3) are paragraphs and the latter divisions thereof subparagraphs.  *See also Frillz, Inc. v. Lader,* 925 F.Supp. 83, 85 (D.Mass.1996), *aff'd,* 104 F.3d 515 (1st Cir.1997), *cert. denied sub nom. Frillz, Inc. v. Alvarez,* —— U.S. ——, 118 S.Ct. 59, 139 L.Ed.2d 22 (1997).  Accordingly, when subparagraph (2)(C) refers to "this paragraph" it is referring to paragraph (2), the formula, and not to (1), lien avoidance itself.  As a result, the effect of

§ 522(f) upon Stoneham's rights would be judged under pre-amendment law.  That law, as Judge Boroff lucidly demonstrated in *Witkowski,* was a morass.  176 B.R. at 116–117.  If, as Chief Judge Kenner has concluded, the amendment were merely a clarification of prior law, *Donahue* at 662, then it can be regarded as overruling my contrary decision in *In re Garro,* 161 B.R. 869, 870 (Bankr.D.Mass.1993), in those cases where the amendment is applicable.  Has the inapplicability of the formula in a "judgment arising" case resurrected my prior view in that limited area?  I think not.  While the legislative history is as confused as Judge Stahl noted in *Silveira,* I think it is still possible to say that Congress specifically intended to overrule Judge Queenan's decision in *In re Gonzalez,* 149 B.R. 9 (Bankr.D.Mass.1993).  *See* H.R. Rep. 103–834, 103rd Cong., 2nd Sess. 35–37 (1994).  I expressly adopted that holding in *Garro.*  The immateriality of the amendment, then, if I were to apply the ancient testamentary rule of dependent relative revocation, might well have resurrected my decision in *In re D'Amelio,* 142 B.R. 8 (Bankr.D.Mass.1992), which I abandoned in *Garro.*  Fortunately, I do not have to reach that point.