RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 17b0005p.06

# BANKRUPTCY APPELLATE PANEL

## OF THE SIXTH CIRCUIT

IN RE: ANTOINETTE COLLEEN PACE,

*Debtor.*

No. 16-8036

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio at Youngstown.
No. 15-42267—Kay Woods, Judge.

Decided and Filed: June 20, 2017

Before: DELK, PRESTON, and WISE, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ON BRIEF:** T. Robert Bricker, T. ROBERT BRICKER, LLC, Canfield, Ohio, for Debtor.

_____

**OPINION**

_____

TRACEY N. WISE, Bankruptcy Appellate Panel Judge. Appellant/Debtor Antoinette Pace ("Debtor") owned nonresidential real estate that foreclosure creditor The Farmers National Bank of Canfield ("FNB") sold in a prepetition foreclosure sale. After the sale but still prepetition, FNB obtained a deficiency judgment against Debtor and filed two judicial liens. During her chapter 7 case, Debtor filed a motion pursuant to § 522(f)(1)(A)[1] to avoid the FNB judgment liens (and two other unrelated judgment liens) on the grounds that they impaired Debtor's Ohio homestead exemption in her residence. The bankruptcy court denied Debtor's motion as to one of FNB's judicial liens, ruling that § 522(f)(2)(C) specifically prohibits the

_____

[1]Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

avoidance of a deficiency judgment lien because it is a lien based on a judgment arising out of a mortgage foreclosure. The court denied Debtor's motion seeking avoidance of FNB's other judicial lien, without prejudice, to the extent that it alleged that the lien was duplicative of FNB's first judicial lien. The bankruptcy court granted the motion to avoid the other two unrelated judicial liens.

For the reasons stated below, the Panel **REVERSES** the bankruptcy court's ruling that § 522(f)(2)(C) precludes avoidance of a mortgage deficiency judgment lien and **REMANDS** this case to the bankruptcy court for entry of an order consistent with this Opinion.

## ISSUES ON APPEAL

Debtor raises two issues on appeal:

1.      Did the bankruptcy court err in denying Debtor's motion to avoid the FNB judicial lien pursuant to § 522(f)(2)(C) because the motion was unopposed?

2.      Did the bankruptcy court err in determining that a judicial lien securing a mortgage deficiency judgment is prohibited from avoidance pursuant to § 522(f)(2)(C) because it is a judgment arising out of a mortgage foreclosure?

## JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. Pursuant to 28 U.S.C. § 158(a)(1), this Panel has jurisdiction to hear appeals "from final judgments, orders, and decrees" issued by the bankruptcy court. For purposes of appeal, an order is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. U.S.*, 489 U.S. 794, 798, 109 S.Ct. 1494, 1497 (1989) (citation and quotation marks omitted); *see also Riley v. Kennedy*, 553 U.S. 406, 419, 128 S.Ct. 1970, 1981 (2008). A "bankruptcy court's order denying [a] [d]ebtor's motion to avoid a lien pursuant to section 522(f) is a final appealable order." *Snyder v. Rockland Trust Co.* (*In re Snyder*), 279 B.R. 1, 2 (B.A.P. 1st Cir. 2002) (citations omitted); *accord*, *Davis v. Davis* (*In re Davis*), Nos. 04-029, 03-06524-M, 314 B.R. 904, at *2 (B.A.P. 10th Cir. 2004) (unpublished table decision) (citation omitted).

A bankruptcy court's legal conclusions are reviewed *de novo*. *Mediofactoring v. McDermott* (*In re Connolly N. Am., LLC*), 802 F.3d 810, 814 (6th Cir. 2015) (citation omitted). "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Menninger v. Accredited Home Lenders* (*In re Morgeson*), 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007) (citation omitted).

## FACTS AND PROCEDURAL HISTORY

The relevant facts are undisputed. Debtor filed a chapter 13 bankruptcy petition on December 21, 2015 ("Petition Date"). She scheduled her residence located at 3481 Forty Second Street, Canfield, Ohio ("Residence") at a value of $147,630. Debtor claimed the Ohio homestead exemption in her Residence in the amount of $132,900 pursuant to Ohio Revised Code § 2329.66(A)(1).[2]

Debtor's Schedule D listed judicial liens encumbering the Residence filed by FNB and Midland Funding. Schedule D also listed a secured claim against the Residence in favor of the Mahoning County Auditor/Treasurer. Schedule D did not list a mortgage against the Residence, but in her answer to Part Four of the Statement of Financial Affairs regarding prepetition lawsuits, Debtor listed a concluded foreclosure case styled *Farmers vs. Antoinette C. Pace*, 2011 CV 00032, in the Mahoning County, Ohio Court of Common Pleas.

Debtor converted her chapter 13 case to a chapter 7 case on March 1, 2016. On June 22, 2016, Debtor filed her Motion to Avoid Liens (Bankr. No. 15-42267, ECF No. 32 ("Motion")) pursuant to § 522(f), seeking to avoid judicial liens on her Residence that impaired her homestead exemption. The Motion identified the subject liens as follows (collectively, the "Judicial Liens"):

---

[2]Pursuant to Ohio Revised Code § 2329.66(B), the Ohio Judicial Conference adjusts the exemption amount in Ohio Revised Code § 2329.66(A)(1) every three years. For the satisfaction of judgments and orders from April 1, 2013 through March 31, 2016 (during which Debtor filed her bankruptcy petition), the exemption amount was $132,900.

- The Farmers National Bank of Canfield, filed May 20, 2014,[3] in the amount of $141,013.65 with $15.39 interest ("FNB Lien No. 1")
- The Farmers National Bank of Canfield, filed May 20, 2014,[4] in the amount of $141,013.65 with $15.39 interest ("FNB Lien No. 2")
- Midland Credit Management, Inc., filed October 21, 2011, in the amount of $1,889.72 with 4% interest ("MCM Lien")
- Matthew C. Giannini, filed February 24, 2015, in the amount of $2,975.00 with 3% interest ("Giannini Lien")

The Motion also asserted that the Mahoning County Treasurer held a lien against the Residence for unpaid real estate taxes totaling $15,435.78.

On February 2, 2016, FNB filed a proof of claim in the amount of $151,869.39, which was denominated Claim No. 5-1. Attached to the proof of claim is a Certificate of Judgment Lien for Lien Upon Lands and Tenements filed July 3, 2014, in the amount of $141,013.65 with interest at the rate of $15.39 per diem and $1,914.15 in costs. The bankruptcy court determined that the Certificate appeared to evidence FNB Lien No. 1.

The bankruptcy court held a hearing on the Motion on August 3, 2016. Although no party opposed the relief requested, during the hearing, the court expressed concern that Debtor willfully allowed real estate taxes on her Residence to remain unpaid to create an impairment to her homestead exemption. The court ordered Debtor to file a supplemental brief on the issue.

Debtor filed her Support Brief (Bankr. No. 15-42267, ECF No. 47 ("Support Brief")) on August 18, 2016, in which she argued that: (i) no party objected to the relief requested; (ii) there was no evidence of fraud by Debtor in allowing unpaid real estate taxes to accumulate to the extent that they impaired her homestead exemption; and (iii) the homestead exemption should be liberally construed in her favor. Debtor also asserted that the amount of the unpaid real estate taxes is $22,612.98, as opposed to the $15,435.78 asserted in the Motion.

On August 23, 2016, the court entered the Order Granting, in Part, and Denying, in Part, Motion to Avoid Liens (Bankr. No. 15-42267, ECF No. 48 ("Order")). Notwithstanding the

---

[3]Debtor changed this date to July 14, 2014, in her appellate brief (ECF No. 13 ("Brief")).

[4]Debtor changed this date to May 30, 2014, in her Brief.

bankruptcy court's request for briefing on the accruing property tax lien issue, the Order does not address this issue. Rather, pursuant to § 522(f), the bankruptcy court ruled that Debtor's homestead exemption was sufficiently impaired to warrant avoidance of the MCM Lien and Giannini Lien and granted the Motion to that extent. The court denied avoidance of FNB Lien No. 1, finding that "it is clear that [FNB] Lien No. 1 is a 'judgment arising out of a mortgage foreclosure'" and "that § 522(f)(2)(C) specifically prohibits the avoidance of this lien." (Order at 6.) Finally, the court denied avoidance of FNB Lien No. 2 without prejudice because, "based on the record before the Court, the Court [could not] find that [FNB] Lien No. 2 is a duplicate of [FNB] Lien No. 1."[5] (*Id.*) Debtor timely filed a notice of appeal of the Order on September 6, 2016.

## DISCUSSION

### I. The Bankruptcy Court did not err in denying the Motion when it was not contested.

Debtor argues that the bankruptcy court erred in denying the Motion "when no party in interest objected and there was no evidence presented otherwise." (Br. at 10.) The bankruptcy court acknowledged that, "[a]lthough no party filed an objection or otherwise responded to the Motion, the Court held a hearing on the Motion . . ." and recognized that Debtor argued in her Support Brief that "no party has objected to the relief requested . . . ." (Order at 4, 5.) Regardless, the court denied the Motion as to the FNB Liens.

The bankruptcy court's local rules provide that "[f]ailure to file a response on a timely basis may be cause for the Court to grant the motion or application as filed without further notice to the extent such action would not conflict with any Federal Rule of Bankruptcy or Civil Procedure." N.D. Ohio Bankr. LBR 9013-1(d). Even so, "[t]he granting of an uncontested motion is not an empty exercise but requires that the court find merit to the motion." *Nunez v. Nunez* (*In re Nunez*), 196 B.R. 150, 156 (B.A.P. 9th Cir. 1996) (citation omitted). "Critical review of uncontested motions, moreover, is consistent with a basic legal principle—that courts

---

[5]The Motion alleges that FNB Lien No. 1 and FNB Lien No. 2 were filed in the same amount on the same day and asserts that Lien No. 2 duplicates Lien No. 1. However, the Motion also states that FNB Lien No. 2 is based on a different court case than FNB Lien No. 1. Debtor's Brief notes that FNB Lien No. 2 "may have been released June 12, 2014," and the Brief does not comment on the matter further. (Br. at 7.) This appeal addresses only the § 522(f)(2)(C) issue.

are not required to grant a request for relief simply because the request is unopposed." *In re Franklin*, 210 B.R. 560, 562 (Bankr. N.D. Ill. 1997). "The public expects, and has a right to expect, that an order of a court is a judge's certification that the result is proper and justified under the law." *In re Evans*, 153 B.R. 960, 968 (Bankr. E.D. Pa. 1993) (quoting *In re Delaware River Stevedores*, 147 B.R. 854, 869-70 (Bankr. E.D. Pa. 1992)). "As the party seeking to avoid the lien [under § 522(f)], [a] [d]ebtor bears the burden of proof by a preponderance of the evidence." *In re Loucks*, No. 11-33747, 2012 WL 260383, at *1 (Bankr. N.D. Ohio Jan. 27, 2012) (citing *Lee v. Bank One, N.A. (In re Lee),* 249 B.R. 864, 867 (Bankr. N.D. Ohio 2000)). "Despite the fact that [a] [d]ebtor's [m]otion is unopposed, the [c]ourt retains the authority and obligation to review her motion and determine whether it has merit." *In re Beauvais*, No. BK14-40365, 2014 WL 2708302, at *1 n.1 (Bankr. D. Neb. June 11, 2014) (citations omitted).

The bankruptcy court did not err in denying the Motion simply because it was unopposed. The court had the authority to consider the merits of the Motion regardless of whether objections were raised. That no objection was raised does not provide a basis to reverse the court's holding.

**II.    Section 522(f)(2)(C) does not prohibit avoidance of a judicial lien that arises as a result of a mortgage foreclosure deficiency judgment.**

**A.    There is no factual dispute that if § 522(f)(2)(C) does not preclude avoidance, all of the Judicial Liens, including the FNB Liens, are avoidable under § 522(f)(2)(A).**

The Motion sought to avoid the Judicial Liens on the Residence pursuant to § 522(f), which provides in relevant part:

> (1) . . . [S]ubject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
> > (A) a judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 523(a)(5);
> >
> > . . . .

(2)(A) For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—

> (i) the lien;
> (ii) all other liens on the property; and
> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;

exceeds the value that the debtor's interest in the property would have in the absence of any liens.

(B) In the case of a property subject to more than 1 lien, a lien that has been avoided shall not be considered in making the calculation under subparagraph (A) with respect to other liens.

(C) This paragraph shall not apply with respect to a judgment arising out of a mortgage foreclosure.

11 U.S.C. § 522(f).

Debtor only may avoid the fixing of a judgment lien on her Residence "to the extent that such lien impairs an exemption to which [Debtor] would have been entitled." 11 U.S.C. § 522(f)(1). Impairment is determined under an equation in § 522(f)(2)(A). To the extent that the sum of the liens on the Residence plus Debtor's exemption in same exceeds the value of the Residence, Debtor's exemption is impaired. 11 U.S.C. § 522(f)(2)(A).

Debtor asserted that the Residence had a value of $147,630 as of the Petition Date and that the Judicial Liens on the Residence collectively totaled $286,892.02. The $22,612.98 of unpaid real estate taxes owed on the Residence are secured by a statutory lien against it under Ohio Revised Code § 5721.10 (the "Real Estate Tax Lien"). Accordingly, the § 522(f)(2)(A) equation using the amounts stated in the Motion plus the updated Real Estate Tax Lien amount is as follows:

| | |
|---|---|
| *A.* Judgment Liens on Residence<br><br>      FNB Lien No. 1    $141,013.65<br>      FNB Lien No. 2    $141,013.65<br>      MCM Lien          $   1,889.72<br>      Giannini Lien      $   2,975.00<br>        Total:           $286,892.02<br>    Plus: Other Liens<br>      Real Estate Tax Lien   $22,612.98[6] | $309,505 |
| *B.* Amount of exemption that Debtor could claim in absence of any liens on Residence under Ohio Rev. Code § 2329.66(A)(1) and 11 U.S.C. § 522(b) | $132,900 |
| *C.* A and B Total | $442,405 |
| *D.* Debtor's valuation of Residence as of Petition Date | $147,630 |
| *E.* Extent of Impairment (Subtract D from C) | $294,775 |

It is not necessary to resolve the factual issue of whether FNB Lien No. 2 is duplicative of FNB Lien No. 1 to determine whether the remaining three Judicial Liens are subject to avoidance under the § 522(f)(2)(A) equation. If FNB Lien No. 2 is removed from the equation, the three remaining Judicial Liens total $145,878.37,[7] and all liens on the Residence (including the Real Estate Tax Lien) total $168,491.35. The impairment would be reduced to $153,761.35 in that scenario, which is still sufficient to support lien avoidance under § 522(f)(1)(A). The bankruptcy court correctly reached this same conclusion.

---

[6]Debtor's exemption is impaired regardless of whether the Real Estate Tax Lien is in the original amount stated in the Motion ($15,435.78) or in the revised amount stated in the Support Brief ($22,612.98). The impairment is reduced to $287,597.80 if the lesser Real Estate Tax Lien amount is used.

[7]The bankruptcy court noted that FNB's Claim No. 5-1 for $151,869.39, alone, exceeds the value of the Residence. (Order at 7.)

**B. Section 522(f)(2)(C) does not preclude avoidance of the FNB Liens.**

If the § 522(f)(1)(A) avoidance analysis ended with the § 522(f)(2)(A) impairment equation, all four Judicial Liens would be avoidable. However, the bankruptcy court held that this lien avoidance calculation was affected by § 522(f)(2)(C), which provides: "[t]his paragraph shall not apply with respect to a judgment arising out of a mortgage foreclosure." 11 U.S.C. § 522(f)(2)(C). Relying on that language, the bankruptcy court denied the Motion as it pertained to FNB Lien No. 1, stating:

> Based on the Debtor's answer to part 4 of the [Statement of Financial Affairs] and Claim No. 5-1, it is clear that [FNB] Lien No. 1 is a "judgment arising out of a mortgage foreclosure." Thus, to the extent the Debtor is attempting to avoid [FNB] Lien No. 1, the Court finds that § 522(f)(2)(C) specifically prohibits the avoidance of this lien.

(Order at 6.) The court did not cite legal authority or analyze the statutory language to support this holding. The Order states that, "[i]n entering this order, the Court has considered the substance of the Motion, the Schedules and other documents filed by the Debtor, and the claims filed in this bankruptcy case." (*Id.* at 2.)

Thus, the final issue before the Panel is the purely legal question of whether a mortgage deficiency judgment lien is a "judgment arising out of a mortgage foreclosure" within the meaning of § 522(f)(2)(C). "A split in authority has emerged on this issue . . . . [under which] [t]he overwhelming majority of courts hold that mortgage deficiency liens are not 'judgments [that] aris[e] out of a mortgage foreclosure' and are therefore avoidable under § 522(f)." *First Nat'l Bank of Manchester v. Elza* (*In re Elza*), 536 B.R. 415 (E.D. Ky. 2015) (citing *Banknorth, N.A. v. Hart* (*In re Hart*), 328 F.3d 45 (1st Cir. 2003); *In re Maxwell*, No. 09-35713, 2010 WL 4736206 (Bankr. E.D. Tenn. Nov. 16, 2010); *In re Burns*, 437 B.R. 246 (Bankr. N.D. Ohio 2010); *In re Linane*, 291 B.R. 457 (Bankr. N.D. Ill. 2003); *In re Carson*, 274 B.R. 577 (Bankr. D. Conn. 2002); *In re Smith*, 270 B.R. 557 (Bankr. W.D.N.Y. 2001)).[8] The Sixth Circuit Court

---

[8]Other opinions holding the majority position include: *Cal. Central Trust Bankcorp v. Been* (*In re Been*), 153 F.3d 1034 (9th Cir. 1998); *In re Anderson*, No. 09 B 12312, 2010 WL 322167 (Bankr. N.D. Ill. Jan. 25, 2010); *In re Pascucci*, 225 B.R. 25 (Bankr. D. Mass. 1998), *abrogated on other grounds* by *Nelson v. Scala*, 192 F.3d 32 (1st Cir. 1999); *In re Rose*, No. 11-62057-7, 2012 WL 1492338 (Bankr. D. Mont. Apr. 27, 2012); *In re Biles*, No. 10-13792-R, 2011 WL 1600521 (Bankr. N.D. Okla. Apr. 27, 2011); *In re Shea*, 533 B.R. 358 (Bankr. E.D.N.Y.

of Appeals has not ruled on this issue, but the three courts within the Circuit that have examined it agree with the majority position. *See Elza*, *Maxwell*, and *Burns*, *supra*. Only two opinions, both from the same court, hold to the contrary: *In re Criscuolo*, 386 B.R. 389 (Bankr. D. Conn. 2008) and *In re Vincent*, 260 B.R. 617 (Bankr. D. Conn. 2000).[9]

Although a majority of courts agree that § 522(f)(2)(C) does not preclude avoidance of a mortgage deficiency judgment lien, different rationales have emerged to support that conclusion. Some courts have examined the foreclosure law of the state in which they sit to determine that a mortgage deficiency judgment lien does not "aris[e] out of a mortgage foreclosure" within the meaning of § 522(f)(2)(C).[10] For example, in *Smith*, the court compared the nature of a mortgage foreclosure judgment with that of a mortgage deficiency judgment under New York state law and concluded:

> A judgment of foreclosure and sale arises out of a foreclosure, as an equitable suit, and it is the judgment of foreclosure and sale to which subdivision 522(f)(2)(C) makes reference. In contrast, a deficiency judgment is a legal remedy which, by statute, is allowed as a relief that is incidental to the foreclosure.

*Smith*, 270 B.R. at 561. Therefore, "presum[ing] that Congress was particular in its selection of words for [§] 522(f)(2)," the *Smith* court concluded that "a deficiency judgment is not subject to the exclusion of" § 522(f)(2)(C), which applies only to a "judgment arising out of a mortgage foreclosure." *Id.*

Other courts in the majority have taken a different approach and focused their analyses on the procedural mechanisms of state foreclosure law. In *Been*, the Ninth Circuit Court of Appeals analyzed California law on sold-out junior lienholders to determine "whether the plain meaning of 'judgment arising out of a mortgage foreclosure' encompasses [a creditor's] judgment lien."

---

2015); *In re Phillips*, 439 B.R. 892 (Bankr. N.D. Ala. 2010); and *In re McMorris*, 436 B.R. 359 (Bankr. M.D. La. 2010).

[9]Interestingly, a decision from that court decided by a different judge holds with the majority. *See Carson*, 274 B.R. at 579-80.

[10]*See, e.g.*, *Burns*, 437 B.R. at 252-53 (Ohio law); *Maxwell*, 2010 WL 4736206 at *6-7 (Tenn. law); *Pascucci*, 225 B.R. at 28-29 (Mass. law); *Rose*, 2012 WL 1492338, at *3 (Mont. law); *Shea*, 533 B.R. at 360-62 (N.Y. law); *Phillips*, 439 B.R. at 895-96 (Ala. law); *McMorris*, 436 B.R. at 363-64 (La. law); *Linane*, 291 B.R. at 460-61 (Ill. law).

*Been*, 153 F.3d at 1036.  California law provides that a junior lienholder's underlying lien is extinguished through the senior lienholder's foreclosure sale.  The "sold-out junior lienholder" then can bring an independent action on the underlying promissory note for the deficiency balance remaining after a foreclosure sale.  Accordingly, the Ninth Circuit affirmed its bankruptcy appellate panel's holding:  "The non-judicial foreclosure sale by . . . the senior lien holder[ ] terminated [the junior lienholder's] secured interest in [the debtor's] property and, therefore, any remaining rights which might 'arise out of' the foreclosure proceeding.  Because [the junior lienholder's] judgment arose out of an independent action on the promissory note, section 522(f)(2)(C) is inapplicable." *Id.* at 1036-37.

In contrast, led by the First Circuit Court of Appeals in *Hart,* other courts in the majority have determined that "application of state law is inappropriate because [§ 522(f)(2)(C)] is not ambiguous." *Hart*, 328 F.3d at 48 (citation omitted).  After closely examining the structure of § 522(f), the First Circuit held that "the meaning of the terms used in § 522(f)(2)(C) become 'sufficiently clear' for [the court] to conclude that Congress did not intend § 522(f)(2)(C) as an exception to otherwise avoidable liens." *Id.*  The First Circuit explained:

> Like the Appellate Panel, when we examine the structure of § 522 and analyze the placement of § 522(f)(2)(C) within this structure, we find that the meaning of "this paragraph" is not ambiguous and that [§] 522(f)(2)(C) does not create any exception to otherwise avoidable judicial liens.  Congress uses "paragraph" to refer to the numbered sections of the statute, and specifically, uses "this paragraph" to refer to § 522(f)(2).  This structural analysis also makes it clear that Congress uses "this subsection" in § 522(f)(2)(A) to refer to all of § 522(f).  Consequently, we are to utilize § 522(f)(2)(A)'s impairment formula for all judicial liens.
>
> Section 522(f)(2)(C) does not create different treatment for "a judgment arising out of a mortgage foreclosure."  Instead, Congress used § 522(f)(2)(C) to contrast mortgage foreclosure judgments from liens which are avoidable under § 522(f), clarifying that the entry of a foreclosure judgment does not convert the underlying consensual mortgage into a judicial lien which may be avoided.  Mortgage foreclosure judgments do not become judicial liens subject to avoidance under § 522.  "Rather, a deficiency judgment—whether it arises in a foreclosure action as in Maine or in a separate action as in Massachusetts—is a non-consensual judicial lien like any other which is subject to avoidance under § 522(f)."

*Id.* at 48–49 (citations omitted). The First Circuit also recognized that "Congress uses the word 'lien' throughout § 522(f) and only uses judgment in § 522(f)(2)(C)." *Id.* at 49. "Congress would have used the word 'lien' [in § 522(f)(2)(C)] if it intended to exclude deficiency judgment liens." *Id.* Upon this reasoning, the First Circuit held that the language of § 522(f)(2)(C) is not ambiguous and does not preclude the avoidance of mortgage deficiency judgment liens. *Id.* As one court noted, "this reading . . . comports with the fact that the 'primary purpose of § 522(f) [is] to benefit debtors,' . . . and the overarching goal of bankruptcy is to provide a 'fresh start.'" *Elza*, 536 B.R. at 423 (citations omitted).

Two bankruptcy courts in the Sixth Circuit, among others, considered both state foreclosure law and the statutory text of § 522(f)(2)(C) before agreeing with the majority and concluding that § 522(f)(2)(C) does not preclude avoidance of mortgage deficiency judgment liens. In *Burns*, the court recognized that "under Ohio law . . . '[t]he right to judgment on a note evidencing the debt secured by a mortgage and the right to foreclose on the mortgage constitute two separate causes of action, one legal and one equitable.'" *Burns*, 437 B.R. at 252 (citation omitted). "'One exhausts the mortgage security, the other affords a personal remedy . . . .'" *Id.* (citation omitted). Because a deficiency judgment lien "is a complimentary remedy that arises out of the underlying obligation, not out of a mortgage foreclosure," the court reasoned that it is removed "from the purview of § 522(f)(2)(C)." *Id.* at 253. The *Burns* court also was persuaded by the textual analysis of § 522(f)(2)(C) in *Hart*. After considering both rationales, *Burns* ultimately held that the mortgage deficiency judgment lien at issue was avoidable. The court in *Maxwell* reached the same conclusion based on its review of Tennessee state foreclosure law and the *Hart* and *Burns* textual analyses. *Maxwell*, 2010 WL 4736206, at *6 and *7. *Burns* and several courts that share the majority view of § 522(f)(2)(C) recognize that courts should begin statutory interpretation by examining the statute's text for ambiguity and only consider legislative history or other outside sources when the statute is ambiguous. *See, e.g., Burns*, 437 B.R. at 249. Those courts rely at least partially upon state law to determine the meaning of § 522(f)(2)(C), but they do not state in their opinions that the statute is ambiguous or unclear.

Upon considering each of the aforementioned approaches to this issue, the Panel adopts the First Circuit's reasoned analysis and conclusion in *Hart* that § 522(f)(2)(C) is unambiguous,

and no review of state law or legislative history is necessary or appropriate to interpret its meaning. "The Sixth Circuit has made clear that statutory interpretation of a Bankruptcy Code provision begins with 'the language of the statute itself'. . . ." *Elza*, 536 B.R. at 418 (quoting *Deutsche Bank Nat. Trust Co. v. Tucker*, 621 F.3d 460, 463 (6th Cir. 2010)).

> Unless they are otherwise defined, the words in a statute will be interpreted as taking their ordinary, contemporary, common meaning. When construing a federal statute, it is appropriate to assume that the ordinary meaning of the language that Congress employed accurately expresses its legislative purpose. If the statutory language is unambiguous, the judicial inquiry is at an end, and the plain meaning of the text must be enforced.

*Deutsche Bank*, 621 F.3d at 462–63 (citation and internal quotation marks omitted).

"'[I]t is a general principle of statutory construction that when Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Hart*, 328 F.3d at 49 (quoting *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 452, 122 S.Ct. 941, 951 (2002)). Applying this tenet, if Congress intended § 522(f)(2)(C) to modify the entirety of § 522(f), it would have used "subsection" rather than "paragraph" in the phrase "[t]his paragraph shall not apply . . . ." Congress also did not reference § 522(f)(2)(C) in § 522(f)(1) where it states that avoidance is "subject to paragraph (3)," which excludes certain nonpossessory, nonpurchase-money liens from avoidance. If Congress wanted to exclude "a judgment arising out of a mortgage foreclosure" from avoidance under § 522(f)(1), it only had to modify § 522(f)(1) to say "subject to paragraph (3) *and paragraph (2)(C)*." It did not, and the Panel must assume that was intentional. Because we find that § 522(f)(2)(C) is not ambiguous, reference to either state law or legislative history is not required to interpret or apply it. Accordingly, the Panel holds that § 522(f)(2)(C) can and must be applied in accordance with its plain meaning; it does not preclude avoidance of mortgage deficiency judgment liens.[11] Rather, § 522(f)(2)(C) "clarifi[es] that the entry of a foreclosure judgment does not convert the

---

[11]For these same reasons, the Panel rejects the analyses and conclusions in the minority Connecticut decisions in *Criscuolo* and *Vincent*, *supra*, both of which find ambiguity in § 522(f)(2)(C) and, thus, analyze § 522(f)(2)(C)'s legislative history.

underlying consensual mortgage into a judicial lien which may be avoided." *Hart*, 328 F.3d at 49.

## CONCLUSION

For the reasons stated, the Panel **REVERSES** the bankruptcy court's ruling that § 522(f)(2)(C) precludes avoidance of a deficiency judgment lien and **REMANDS** this case to the bankruptcy court for entry of an order consistent with this opinion.